Mary FRANKLIN, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. No. 83–1700.

United States District Court, D. New Jersey.

Dec. 4, 1984.

Freeman & Bass by Joel Solow, Newark, N.J., for plaintiff.

Ruth V. Simon, Sp. Asst. U.S. Atty., New Jersey, N.J., for defendant.

## OPINION

LACEY, District Judge.

Plaintiff Mary Franklin filed an application for disability insurance benefits on November 28, 1980, and for Supplemental Security Income (SSI) on November 30, 1984. Plaintiff claimed a disability as of July 1976 due to "arthritis, orthopedic, hypertension, cardiovascular, neurological, neuropsychiatric, opthalmological [*sic*]." The application was denied initially and on reconsideration. A hearing was held on November 15, 1981. The ALJ, in a decision dated November 19, 1982, found that plaintiff's insured status had expired on June 30, 1980, and that prior to January 1982 plaintiff had not suffered any impairment or impairments which significantly limited her ability to perform basic work-related functions. In addition, the ALJ found that after January 1982 the severity of plaintiff's impairments equalled the requirements of section 10.10 A, Subpart P, Appendix 1, Regulations No. 4, and that such impairments would preclude her from working for at least twelve months. Thus, plaintiff was found to be entitled to SSI benefits after January 1982, but was denied SSI benefits for any prior time period.

Disability insurance benefits were denied entirely because of the ALJ's finding that the disability period did not commence until after plaintiff's insured status had expired. The Appeals Council confirmed the ALJ's decision on March 10, 1983, rendering it the final decision of the Secretary. Plaintiff now seeks review of the Secretary's decision under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Specifically, plaintiff disputes the ALJ's decision with respect to the date of onset of the disability.

Disability is defined identically for the purposes of disability insurance and SSI benefits as inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A); § 1382c(a)(3)(A). If the applicant is presently engaged in substantial activity, or does not have an impairment severe enough to limit significantly his or her ability to perform basic work activities, a finding of nondisability is justified. *See* 20 C.F.R. 404.1520; 404.1526.

## MEDICAL EVIDENCE

The earliest medical evidence of record consists of a battery of five reports resulting from medical examinations conducted between August 9, 1979, and September 4, 1979.

Dr. Pollock, a psychiatrist examined plaintiff on August 9, 1979. He found hyperactive deep tendon reflexes, tremors of the eyelids, tongue and fingers, depression of corneal and pharyngeal reflexes, and a moderately positive Romberg test. He diagnosed "[n]eurological residuals of exposure to noxious fumes, dust and loud noise and traumatic anxiety psychoneurosis, also sciatic neuritis ...." Dr. Pollock also noted that plaintiff was 61 inches tall, weighed 222 pounds, and had blood pressure of 130/80, and that she "appeared nervous and worried." He estimated a 100 percent disability.

Dr. Ahmad, an orthopedist, examined plaintiff on August 14, 1979. He diagnosed plaintiff as suffering from cervical and lumbosacral sprain, and varicose veins. He found that flexion of both the cervical spine and the knees was restricted by five degrees. There were spasms in the paravertebral region of the cervical spine, the trapezius muscles, and the buttock areas. Movements of the low back were restricted in flexion by twenty degrees; extension and lateral bending was restricted by ten degrees. There was difficulty in squatting and while standing on the toes and on the heels. There was tenderness in both knees as well as in the lumbosacral region. Varicose veins were also present. He estimated a 100 percent disability.

Dr. Friedman examined the plaintiff on August 29, 1979. He diagnosed plaintiff as having chronic bronchitis and hypertensive cardiovascular disease. His examination of plaintiff revealed the beginning of arcus senilis in the eyes, and Grade I hypertensive changes in the eyes. In addition, he found accentuation of the aortic components of the second heart and cardiac enlargement. Testing of the pulmonary function revealed a vital capacity of 1.4 liters which is 43% of predicated normal. He found evidence for restricted pulmonary disease and exogenous obesity. He noted that plaintiff was 64 inches tall, weighed 225 pounds, and found the blood pressure to be 160–94. Dr. Friedman also noted that plaintiff had no varicose veins or osteoarthritis, and found the chest and lungs to be clear. He estimated a 25% disability.

Dr. Klein, an ophthalmologist, examined plaintiff on September 4, 1979, and diagnosed her as having chronic conjunctivitis of both eyes. This diagnosis was apparently based on a finding that both conjunctivas were "infected with dilated blood vessels." He found a 10% permanent partial total disability.

Dr. Ghander also examined plaintiff on September 4, 1979. His report revealed a bilateral hearing impairment, rhinosinuvitis, nasopharyngitis and tinnitus. He estimated a permanent disability of 35% for both ears.

At the request of defendant, plaintiff was also examined by Dr. Amato in early 1981—the report is dated February 4, 1981. Examination revealed that the plaintiff had an elevated blood pressure of 164/102. However, pulse was regular and an electrocardiogram revealed normal sinus rhythm. The axis was neutral and one junctional premature beat was noted. The P wave in VI was suggestive of left atrial enlargement. The chest x-ray revealed a cardiac silhouette with a moderate degree of cardiomegaly. Examination of the musculature and musculoskeletal system revealed no joint deformity. Neurological examination revealed no motor or sensory deficits, and examination of the extremities revealed no peripheral edema, clubbing or cyanosis. Plaintiff's weight was listed as 249½ pounds and her height as 63½ inches. Dr. Amato concluded that the "arthritis

mentioned by the patient is apparently due to degenerative arthritis associated with exogenous obesity," but that plaintiff should, nonetheless, "not be considered unable to work."

Hospital records show that plaintiff was admitted to the Hospital Center at Orange in January 1982 due to severe cervical radiculopathy. Morbid obesity, cholelesthiasis, hypertensive cardiovascular disease and uterine myoma were also diagnosed. On admission plaintiff weighed 255 pounds and her blood pressure was 124/80. EMG and nerve conduction studies showed bilateral C6 radiculopathy. X-rays of the cervical spine showed significant degenerative changes at C4 and C5–6 levels. X-rays of the lumbosacral spine showed narrowing of these disc spaces. Plaintiff complained of numbness in the hands and fingers in addition to radiating pain. Plaintiff was treated with cervical traction and muscle relaxants.

The only other medical evidence included in the record is a brief handwritten note from Dr. Edmondson, plaintiff's treating physician, addressed to a Dr. Nichols, and dated August 8, 1980. Dr. Edmondson noted that plaintiff had "mild hypertension under good control." The rest of the note is illegible, and the record fails to provide clarification.

### PLAINTIFF'S TESTIMONY

Plaintiff was born in 1934, and the highest grade completed by her was eleventh grade. She testified to being 63½ inches tall.

Plaintiff worked as a shirt presser for approximately twenty-three years until she quit her job in July 1976; she claims that she became unable to work at that time. She has not been employed in any other capacity since then. She stated that her job required constant standing, but that no lifting was involved.

According to plaintiff's testimony, she first complained of pains in her legs, arms and shoulders to Dr. Edmondson in 1974. She stated that he prescribed aspirin and high blood pressure medication at that time, and that in 1976 he began treating her arthritis with prescription medication. At the time of the hearing she claimed to be taking the following medications: Aldomet, Tenuate Dospan, Quinamor, Zyloprin, Motrin, Lasix, Bellengal, and Hygroton. Plaintiff claimed that she could not sit for more than the length of the bus ride from East Orange to Newark without her joints stiffening. She also stated that she could not walk enough to get the significant exercise called for by her Weight Watcher's program.

In addition to the arthritis, plaintiff testified that she had intermittent problems with gout, a pinched nerve (she was wearing a special collar at the hearing), uterine fibroid tumors, and high blood pressure. In terms of subjective symptoms, she stated that she had numbness and swelling of the extremities, dizziness and blurring vision, "sweats and nervousness."

Plaintiff had never been hospitalized prior to 1982 except for "female problems." She also stated that she was injured in a bus accident in 1979 which resulted in her having to wear a cast on her left knee for six weeks.

Plaintiff testifies that she stays home most of the time. She stated that she is able to care for her personal hygiene, but that her sixteen-year-old son, who lives with her, does most of the housework, and that her sister helps her out with the shopping.

### THE ALJ'S DECISION

The ALJ found that plaintiff had not suffered from a severe impairment before June 1980. Prior to this date he found a paucity of evidence that plaintiff's alleged impairments would significantly restrict basic work-related functions. He noted specifically with respect to each of the five medical examinations conducted in August/September 1979 that the various diagnoses suggesting partial or total disability were, at best, thinly supported by objective medical findings. He also noted that these examinations were performed in connection

with a workers' compensation case, and that under the authority of *Minitee v. Harris*, 510 F.Supp. 1216 (D.N.J.1981), such reports, though admissible, are not entitled to much weight because they are not geared to the statutory tests of disability defined by Section 223(d)(1) of the Social Security Act. The absence of corresponding and possibly conflicting reports obtained by the employer's insurance carriers was also noted.

With respect to plaintiff's subjective complaints of pain prior to the date of expiration of insurance eligibility, the ALJ noted the lack of corroborative evidence in support of plaintiff's claims: plaintiff "takes no strong pain killing medication, attended no regular treatment sessions for pain, and shown [*sic*] no significant restriction in daily activities, loss of weight or extreme changes in personality...." The ALJ acknowledged the potentially disabling character of severe pain, and accepted plaintiff's contention that she experienced some pain, but nonetheless concluded that there was insufficient evidence of pain severe enough to, either by itself or in combination with other impairments, preclude plaintiff from performing substantial gainful activity.

Although the ALJ did not explicitly consider Dr. Amato's report in connection with either the period prior to June 1980 or the period between then and January 1982 when plaintiff was hospitalized, he did consider that report in conjunction with the report of the hospital in reaching his conclusion that plaintiff was disabled as of January 1982. He found that the combination of plaintiff's increased weight, the x-ray findings of cervical radiculopathy, and plaintiff's complaints of pain met the criteria set forth in Section 10.10 A, Appendix 1, Regulations No. 4 of Subpart P. The ALJ's decision concluded with the following findings:

### THE ALJ'S FINDINGS

1. The claimant met the special earnings requirements of the Act on July 1976, the date that the claimant stated she became unable to work, and continued to meet them through June 30, 1980.

2. The claimant has not engaged in substantial gainful activity since July 1976.

3. The claimant has the following impairments: cervical radiculopathy, moderate hypertension, cholelithiasis and morbid obesity.

4. After January 1982 the claimant's complaints of pain are credible in the light of the evidence of record.

5. Prior to January 1982 the claimant did not have any impairment or impairments which significantly limited the ability to perform basic work-related functions; therefore, the claimant did not have a severe impairment prior to January 1982.

6. After January 1982 the severity of the claimant's impairments equals the requirements of Section 10.10 A, Subpart P, Appendix 1, Regulations No. 4, and has precluded her from working for at least 12 months.

7. The claimant was not under a disability as defined in the Social Security Act, on or before the claimant's date last insured June 30, 1980.

### STANDARD OF REVIEW

In reviewing the Secretary's decision, this court must determine whether there is substantial evidence in the record as a whole to support the Secretary's findings. 42 U.S.C. § 405(g) (Supp. V 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979). That standard is deferential, but not meaningless; the court "retains a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). *Accord, Baerga v. Richardson*, 500 F.2d 309, 313 (3d Cir.1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclu-

sion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). *Accord, Stewart v. Secretary of HEW,* 714 F.2d 287, 290 (3d Cir.1983). Substantial evidence may fall short of a preponderance, and the possibility of drawing two inconsistent conclusions from the record does not preclude a finding of substantial evidence in support of one. *Consolo v. Federal Maritime Comm.,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Port Norris v. I.C.C.,* 697 F.2d 497, 502 (3d Cir.1982). But the evidence "must do more than create a suspicion of the existence of the fact to be established.... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Consolo, supra,* 383 U.S. at 620, 86 S.Ct. at 1026, quoting *Labor Board v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). The substantial evidence standard applies not only to administrative determinations of basic facts, but to inferences drawn therefrom. *Reading v. Mathews,* 542 F.2d 993, 997 (7th Cir.1976); *Jolley v. Weinberger,* 537 F.2d 1179, 1181 (4th Cir. 1976); *Reyes v. Harris,* 476 F.2d 910, 914 (D.C.Cir.1973); *Beane v. Richardson,* 457 F.2d 758, 759 (9th Cir.1972), *cert. denied,* 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1973).

■ I must also review the ALJ's decision for errors of law. *Nettles v. Schweiker,* 714 F.2d 833, 836 (8th Cir.1983); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983); *Doran v. Schweiker,* 681 F.2d 605, 609 (9th Cir.1982); *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981).[1] The legal findings of the ALJ are not entitled to the deference given findings of fact. *Allison v. Heckler,* 711 F.2d

145, 147 n. 5 (10th Cir.1983); *Wiggins, supra,* 679 F.2d at 1389 & n. 3. Evidence cannot be "substantial," or even relevant, except in light of the correct legal standard.

## DISCUSSION

■ The ALJ found that plaintiff did not suffer from a severe impairment prior to the expiration of her insured status in June 1980. The only evidence of record pertaining to this period are the reports of Doctors Pollock, Ahmad, Friedman, Klein and Ghander. The ALJ noted that the diagnoses of these five physicians, which suggested partial or total disability, were, at best, thinly supported by objective medical findings.

Beyond this, the court takes notice that each of these physicians frequently prepares consultative reports in support of claims for Social Security benefits. Furthermore, plaintiff's representative, the law firm of Freeman and Bass, invariably submits these physicians' reports to support their clients' claims. After a review over several years of reports from each of these physicians, it must be said that the reports before me are of questionable weight. With few exceptions over the years, these physicians' findings and conclusions have been remarkably similar in report after report, while dealing with males and females of widely disparate backgrounds. They certainly do not reflect a highly individualized examination of the kind required in matters such as this. What happens frequently is that the Freeman and Bass firm retains these physicians to examine clients as petitioners in workers' compensation proceedings and then uses their reports twice, first in the compensation matter and then—using the same report—in the disability matter. This is why their reports so often

---

1. *See Wallace v. Secretary of HHS,* 722 F.2d 1150, 1155–56 (3d Cir.1983) (remanding, in part because Secretary misapplied regulations); *Burnam v. Schweiker,* 682 F.2d 456 (3d Cir.1982) (same); *Fowler v. Califano,* 596 F.2d 600, 602 (3d Cir.1979) (decision of ALJ "fails to observe the appropriate legal standard"); *Farley v. Calabrezze,* 315 F.2d 704, 706 (3d Cir.1963) (ALJ's

decision must have "reasonable basis in law"). Recent district court cases have recognized outright our duty to reverse for legal error. *Axe v. Dept. of HHS,* 564 F.Supp. 789, 791 (E.D.Pa. 1983); *Curtin v. Harris,* 508 F.Supp. 791, 793 (D.N.J.1981). *Accord, Friedberg v. Schweiker,* 721 F.2d 445, app. at 447 (3d Cir.1983) (reprinting with approval the district court opinion).

reflect workers' compensation terminology, a fact which was commented upon in *Minitee v. Harris*, 510 F.Supp. 1216 (D.N.J. 1981). Examples of such reports are made a part of this opinion. *See* Appendix.

These physicians' reports in these cases fit their unvarying pattern and were quite properly accorded very little weight.[2] It is noted these physicians are not claimed to be treating physicians.

The only other reports of record pertaining to the period prior to January 1982, the date which the ALJ determined that the plaintiff became disabled, are the reports of Dr. Edmondson, dated August 8, 1980, and Dr. Amato, dated February 4, 1981. Dr. Edmondson found "mild hypertension under good control" and Dr. Amato specifically concluded that "[plaintiff] should not be considered unable to work." It should be noted that, although the ALJ did not explicitly consider Dr. Amato's report in and of itself, he did consider it in conjunction with the report of plaintiff's January 1982 hospitalization. It is apparent, therefore, that there is no substantial evidence of record which would indicate that plaintiff was disabled until the reports of her hospitalization in January 1982. Only at that time did the ALJ find that the combination of plaintiff's increased weight, cervical radiculopathy, and corroborated complaints of pain, were severe enough to meet the criteria of listed impairments as set forth in Section 10.10 A, Appendix 1, Regulations No. 4 of Subpart P.

With respect to plaintiff's subjective complaints of pain prior to the date of expiration of insurance eligibility, the ALJ noted the lack of corroborative evidence in support of plaintiff's claims. He stated that plaintiff "takes no strong pain killing medication, attended no regular treatment sessions for pain, and shown [*sic*] no significant restriction in daily activities, loss of weight or extreme changes in personality...." The ALJ acknowledged the potentially disabling character of severe pain, and accepted plaintiff's contention that she experienced some pain, but nonetheless concluded that there was insufficient evidence of severe pain which, either by itself or in combination with other impairments, precluded her from performing substantial gainful activity. The ALJ's conclusion was clearly proper.

## CONCLUSION

The ALJ's determination that disability had not been shown to have begun on or before January 1982 is supported by substantial evidence. The ALJ was justified in giving greater weight to the Amato report and the Edmondson findings and according little weight to the Pollock-Ahmad-Friedman-Klein and Ghander reports.[3]

## ORDER

For the reasons stated in the opinion of this date,

IT IS on this 4th day of December 1984,

ORDERED that the final decision of the Secretary of Health and Human Services in the above captioned matter shall be, and hereby is affirmed.

## APPENDIX

In addition to the reports by Drs. Pollock, Ahmad, Friedman, Klein and Ghan-

---

**2.** The ALJ also noted that these examinations were performed in connection with a workers' compensation case, and that under the authority of *Minitee v. Harris*, 510 F.Supp. 1216 (D.N.J. 1981), such reports, though admissible, are not entitled to much weight because they are geared to a different statutory test of disability than that defined by Section 223(d)(1) of the Social Security Act. This court, however, specifically notes that it is not bound by the holding in *Minitee* in this case. The fact that these physicians' reports, in themselves, are generally suspect is sufficient ground to afford them little weight.

**3.** In the future it would be advisable that the Secretary seek out any corresponding and possibly conflicting reports obtained by the employees' insurance carriers in cases where there is a workers' compensation claim involved. Their presence in the record may compliment or rebut reports submitted by the claimant. This suggestion would necessarily impose more work on the ALJ's. However, if the true extent of a claimant's condition is to be discovered, such a duty seems inevitable.

der, submitted to support plaintiff's claim, four more reports from these doctors were chosen at random from those Social Security cases now pending before the district court in which the plaintiff is represented by Freeman & Bass. While all five reports date from May 1979 through September 1983, this court has seen many earlier dated reports and anticipates seeing later dated reports submitted for other cases now pending.

The first report in this appendix under each doctor's name is from the transcript of the present case. An inspection of the additional four reports shows that they are strikingly identical, not only to each other, but to the reports of the present case as well. Particular note should be taken of the fact that, even though these five physicians have related varying personal histories and differing impairments for each of the individuals they examined, their findings and ultimate conclusions are, nonetheless, the same for each. It should further be noted that other reports, not made part of this appendix, were also gathered and were found to be identical as well. Furthermore, some of these plaintiffs did not even assert certain of the conditions which these doctors reported as the reason for their disabilities. Thus, these five reports, viewed together, clearly are sufficient to illustrate the point that these doctors' reports may properly be afforded little, if any, weight.

792

APPENDIX A

Dr. Samuel Pollock

174

SAMUEL L. POLLOCK. M. O.
PROFESSIONAL ASSOCIATION
50 PARK PLACE
SUITE 1530
NEWARK, N. J. 07102

(201) 443-1115

313 STATE STREET
SUITE 301
PERTH AMBOY, N. J. 08861

(201) 826-2575

**REPORT OF NEUROPSYCHIATRIC EXAMINATION**

September 22, 1983

Freeman and Bass, Esqs.
24 Commerce Street, Suite 726
Newark, New Jersey 07102

Your File No. 35428-C

EDDIE FELDER, 576 Walnut Street, Elizabeth, New Jersey, age 57, divorced; employed by Elizabeth Lumber Company, as a truck driver.

HISTORY: He was employed by Elizabeth Lumber Company. Prior to that he worked for the National Tool for a period of 3 years, until 1975, as a laborer. He also worked for Allied Industrial for 19 years, until 1972, as a maintenance worker.

He was employed by Elizabeth Lumber Company for 3 years, until 11/80. He was exposed to dust, fumes, gases, chemicals, noise, temperature changes and wetness. He was required to do bending, lifting, standing, sitting and manipulations of his hands and feet.

CHIEF COMPLAINTS: Coughs, with phlegm; chest pains, shortness of breath, irritation of nose and throat. Difficulty hearing; has to turn radio and TV up louder and ask people to talk louder. Blurred vision. Lights bother his eyes; eyes tear and run. Pains in neck, shoulders back, arms, legs, hands and feet on bending, lifting, changes of weather; stiffness, soreness and weakness. He feels nervous and irritable. Headaches, dizziness. He is worried about his conditions and about the future and his inability to work.

PAST HISTORY: Suffers with arthritis, high blood pressure and stomach ailment. Hospitalized n Alexian Brothers emergency 1980 for knife wound to neck.

EXAM, MENTAL AND NEUROLOGICAL: He appeared nervous and worried. Ht. 71". Wt. 175 lbs. Blood pressure 120/80. Head shows no scars. Eyes show normal pupillary reaction, no nystagmus, normal fundi. Gait normal. Corneal and pharyngeal reflexes depressed. Deep tendon reflexes all hyperactive. Tremors of eyelids, tongue and fingers noted. Romberg test shows moderate swaying. Cranial nerves intact. Sensory and motor systems normal. Coordination intact.

DIAGNOSIS AND OPINION: Neurological residuals of exposure to noxious fumes and dust and loud noise, also sciatic neuritis, and traumatic anxiety psychoneurosis, attributable to exposure at work.

As a physiological industrial unit, he appears to be 100% disabled.

FEE FOR EXAM AND REPORT.....$100.00

SAMUEL L. POLLOCK, M.D.
Life Fellow of the American Psychiatric Association

SLP/hb

EXHIBIT _15_

Pg_____ Of_____

25983-C

SAMUEL L. POLLOCK, M. D.
PROFESSIONAL ASSOCIATION
10 COMMERCE COURT
SUITE 717
NEWARK, N. J. 07102

(201) 642-1115

313 STATE STREET 88
SUITE 301
PERTH AMBOY, N. J. 08861

(201) 826-2878

## REPORT OF NEUROPSYCHIATRIC EXAMINATION

August 9, 1979

Freeman & Bass, Esqs.
24 Commerce Street
Newark, New Jersey 07102 XRKKXXKX 25983-C

MARY FRANKLIN: 30 So. Munn Ave., East OrangeN.J, age 44,separated,employed
by Various Companies.

HISTORY: She has worked in the cleaning industry as a presser and working
around cleaning of garments from approximately 1953until 1976. She worked
for Schait and Son Cleaners from 1953 until 1965; she then worked forxﬁﬁﬁﬁ
Golden Cleaners from 1966 until 1974. She last worked for the Twin Method
cleaners from 1974 until 1976.

 In connection with her work; she has beenexposed to dust, fumes, lifting
and bending; loud noises. She also is required to stand on her feet all day
and do manipulations with her hands. She also was exposed to temperature
changes. She developed high blood pressure; enlargement of her heart;
bronchitis; and had a bus accident in 1964 and received settlement of $800.00.

CHIEF COMPLAINTS: Headaches, feels nervous, irritable, restless and sleepless,
ahe is moody and depressed. Coughs with phlegm; irritation of nose and throat;
difficulty hearing; chest pains; shortness of breath; eyes tear and blur.
Pains in both legs and both arms; withradiation into lower back to both
legs to toes; pains in neck, stiffness of neck, cannot bend, lift anything
heavy, sit or stand long. Pain in change of weather.

PAST HISTORY: Buss accident, 6/11/74; injury to left knee.

EXAM MENTAL AND NEUROLOGICAL: She appeared nervous and worried. Ht. 61"
Wt. 222 lbs. Blood Pressure; 130/80. Head shows no scars. Eyes shownormal
pupillary reaction, no nystagmus, normal fundi. Gait normal. Corneal
and pharyngeal reflexes depressed. Deep tendon reflexes all hyperactive.
tremors of eyelids, tongue and fingers noted. Romberg test shows moderate
swaying. Cranial nerves intact. Sensory and motor systems normal. Coordination
intact.

**EXHIBIT 19**

DIAGNOSIS AND OPINION: Neurological residuals of exposure to noxious fumes,
dust and loud noise and traumatic anxiety psychoneurosis, also sciatic neuritis,
attributable to accident and exposure at work.

EXHIBIT:_____17_____

As a physiological industrial unit, regardless of cause, this petitioner appears
to be 100% disabled.

FEE FOR EXAM & REPORT $50.00 SAMUEL L. POLLOCK, M.D.

SAMUEL L. POLLOCK, M. D.
PROFESSIONAL ASSOCIATION
10 COMMERCE COURT
SUITE 717
NEWARK, N. J. 07102
(201) 642-1115

313 STATE STREET
SUITE 30.
PERTH AMBOY N.J. 38861
(201) 826-2575

162

REPORT OF NEUROPSYCHIATRIC EXAMINATION

July 26, 1979

Freeman & Bass, Esqs.
24 Commerce Street
Newark, N.J. 07102

ADOLFO A. CRUZ: 16 Cortland Street, Newark, N.J., age 38, married, employed by City of Newark, as a maintenanceman.

HISTORY: He was in the employ of the City of Newark, Park and Recreation for a period of 5 years, until 2/12/79. He was employed there as a maintenance worker. He worked outdoors, exposed to gases and fumes from the lawn movers, exposed to changes of temperatures, dust, noise, wetness. He was required to do a lot of bending, lifting, standing and manipulations of his hands and feet.

CHIEF COMPLAINTS: Cough with phlegm, chest pains, shortness ob reath, Irritation of nose and throat. Difficulty hearing. Eyes tear and blur. Pains on bending, lifting, change of weather, stiffness, soreness and weakness. Nervous, irritable, headaches, dizziness, sleepless. Worried about conditions and future.

PAST HISTORY: Auto accident 2/13/78, fracture collar bone on right side, under treatment and pending. St. James Hospital 2/13/79 to 2/28/79 for fracture of collar on the right side. 3/79 2 days United Hospital for collar bone. April 8/79 to 4/11/79 St. James for collar bone. 7 or 8 years ago, injured right arm in auto accident, collected $5,000.00.

EXAM, MENTAL AND NEUROLOGICAL: She appeared nervous and worried. Ht:71" Wt: 147 lbs. Blood pressure: 120/80. Head shows no scars. Eyes show normal pupillary reaction, no nystagmus, nromal fundi. Gait normal. Corneal and pharyngeal reflexes depressed. Deep tendon reflexes all hyperactive. Tremors of eyelids, tongue and fingers noted. Romberg test shows moderate swaying. Cranial nerves intact. Sensory and motor systems normal. Coordination intact.

DIAGNOSIS AND OPINION: Neurological residuals of exposure to noxious fumes, dust and loud noise and traumatic anxiety psychonurosis, also sciatic neuritis, attributable to accident and exposure at work.

As a physiological industrial unit, regardless of cause he appeared to be 100% disabled.

Fee for Exam and Report $50.00

Exhibit B-16

SAMUEL L. POLLOCK, M.D.
Life Fellow of Amer. Psychiatric Assoc.

SLP/mh

Exhibit: B-16

October 19, 1981

Freeman & Bass, Esqs.
?4 Comerce Street
~ark, N.J.

File No. 31525-C

ROPERT LEE, 62 Leslie Street, East Orange, NJ., age 42, single, employed by E.K. Constru-
,~*ion Co. as a laborer.

_STORY: He was employed by respondent for a period of 9 years until April 1981.
During the course of his employment, he was exposed to a great deal of dust, fumes, gases,
chemicals, noise, temperature.changes and wetness. He was required to do a great deal of
bending, lifting, standing and manipulations of his hands and feet. He is not working.

CHIEF COMPLAINTS: Headaches, dizziness, feels nervous and worried. Right eye tears and
blurs, he has loss of sight in left eye. Difficulty hearing. Pains and stiffness of
'neck and shoulders. Coughs with phlegm, chest pains and shortness of breath. Cannot bend,
lift anything heavy, sit or stand long. Pains on changes of weather.

PAST HISTORY: Head injury 4/78, collected $2,500.00/ mouth injury 6/81, collected $2,500.00.
Injury to back, 1978, collected $1700.00. Back injury 1976, collected $500.00. College
Hospital 1976 for back injury; St. Michael's Hosp. 6/78 for head injury; college Hosp.
4/2/81 to 4/20/81 for gunshot wound in left eye.

AM, MENTAL AND NEUROLOGICAL: He appeared nervous and worried. Ht. 70" Wt. 165 lbs.
Blood Pressure 120/80. Head shows no scars. Eyes were not examined. Gait normal. Corneal
and pharyngeal reflexes depressed. Deep tendon reflexes all hyperactiave. Tremors of eyelids,
tongue and fingers noted. Romberg test shows moderate swaying. Cranial nerves intact. Sensory
and motor systems normal. Coordination intact.

DIAGNOSIS AND OPINION: Neurological residuals of exposure to noxious fumes, dust and loud
noise and traumatic anxiety psychoneurosis, also sciatic neuritis, attributable to accident
and exposure at work.

As a physiological industrial unit, regardless of cause, he appeared to be 100% disabled.

FEE FOR EXAM AND REPORT......$50.00.

SAMUEL L. POLLOCK, M.D.
Life Fellow of the Amer. Psychiatric Assoc.

SLP/mj

EXHIBIT 24 (1)

SAMUEL L. POLLOCK, M. D.
PROFESSIONAL ASSOCIATION
10 COMMERCE COURT
SUITE 717
NEWARK, N. J. 07102
(201) 642-1118

313 STATE STREET
SUITE 301
PERTH AMBOY, N. J. 08861
(201) 826-2575

## REPORT OF NEUROPSYCHIATRIC EXAMINATION

July 24, 1980

Freeman & Bass, Esqs.
24 Commerce Street
Newark, N.J. 07102

JAMES BRYANT, 327 S. 12th St., Newark, N.J., age 45, separated, employed by
Wallace & Tiernan as a painter.

HISTORY: He was in the employ of Wallace & Tiernan for a period of 9 years, un-
til September of 1979.

During the course of his employment, he was exposed to dust, fumes, gases,
chemicals, noise, temperature changes and wetness. He was required to do
a great deal of bending, lifting, standing and manipulations of his hands
and feet.

CHIEF COMPLAINTS: Headaches and dizziness. Feels nervous, irritable, rest-
less and sleepless. Vision is blurry; light bother his eyes;tear and run
water. Difficulty hearing; has to turn the t.v. and radio up louder; asks
people to talk in a louder voice. Irritation of nose and throat. Brings
up phlegm on coughing, has chest pains and shortness of breath. Pains on
bending and lifting in neck, shoulders, arms, legs, back, and feet. Also
stiffness, soreness and weakness. Pains on weather changes.

PAST HISTORY: VA Hospital 8/79 for broken ankle on the left foot.
1970, 72, 73 and 74, confined in VA Hospital for pneumonia.

EXAM, MENTAL AND NEUROLOGICAL: He appeared nervous and worried. Ht. 69"
Wt. 165 lbs. Blood Pressure 130/80. Head shows no scars. Eyes show normal
pupillary reaction, no nystagmus, normal fundi. Gait normal. Corneal and
pharyngeal reflexes depressed. Deep tendon reflexes all hyperactive. Tremors
of eyelids, tongue and fingers noted. Romberg test shows moderate swaying.
Cranial nerves intact. Sensory and motor systems normal. Coordination intact.

DIAGNOSIS AND OPINION: Neurological residuals of exposure to noxious fumes,
dust and loud noise and traumatic anxiety psychoneurosis, also sciatic
neuritis, attributable to accident and exposure at work.

As a physiological industrial unit, regardless of cause he appeared to be
100% disabled.

**EXHIBIT 16**

FEE FOR EXAM AND REPORT.....$50.00.

SAMUEL L. POLLOCK,M.D.
Life FEllow of the Amer. Psychiatric Assoc.

SLP/mj

Exhibit No.

2307

APPENDIX B

Dr. I. Ahmad

I AHMAD M.D., F.R.C.S., P.A.
DIPLOMATE AMERICAN BOARD OF ORTHOPEDIC SURGERY
ORTHOPEDIC & HAND SURGERY

*25983·C*
87

283 HIGH STREET
PERTH AMBOY, NEW JERSEY 08861

828-9150

August 14, 1979

SUITE 714
10 COMMERCE COURT
NEWARK NEW JERSEY 07102

641 5900

Freeman & Bass, Esqs.
24 Commerce Street
Newark, New Jersey

Re: Mary Franklin
30 S. Munn Avenue
East Orange, New Jersey
25983-C

HISTORY: Age 44, employed by Schait & Son Cleaners from 1953-1965, Golden Cleaners from 1966-1974 and Twin Method Cleaners from 1974-1976. She was exposed to dust, dirt, fumes, gases, noise, bending, lifting, stress & strain. She developed trouble with her chest, back, arms, legs, hands and feet. She has received no recent medical treatment. She last worked 1976.

PAST HISTORY: Bus accident, June 11, 1979, left knee; bus accident, 1964, received award; high blood pressure, enlargement of heart, bronchitis.

COMPLAINTS: Chest pains, shortness of breath, coughs, irritation of nose and throat; difficulty in hearing, blurry vision; neck, back, arms, legs, hands and feet: pain on bending and lifting, pain on change of weather, stiffness, soreness, weakness; Nervous system: nervous, irritable, worried.

EXAMINATION: Both the knees were tender. Flexion was restricted by 5 degrees. Varicose veins were present. Examination of the petitioner's cervical spine revealed spasms in the paravertebral region. Midline tenderness was present over the vertebral spines. Flexion of the cervical spine was restricted by 5 degrees. Extension and lateral bending was painful. Trapezius muscles were under spasm. There was no gross neurolgoical deficit in the upper extremities. Deep tendon reflexes were intact. Circulation was satisfactory. Examination of the lumbosacral region revealed that tenderness was present in the area. Muscle spasms did extend to the buttock areas. Movements of the low back were restricted in flexion by 0 degrees. Extension and lateral bending was restricted by 10 degrees. Straight leg raising test was positive. Lasegue's Test was painful. The petitioner had difficulty in squatting down. Difficulty was experienced while standing on the toes and on the heels. Deeptendon reflexes were obtained.

DIAGNOSIS:
1. Cervical & Lumbosacral sprain
2. Varicose veins

CONCLUSION: She is totally disabled as a physiological unit. Medical and neurological consultations are advised.

Truly yours,

I. Ahmad, M.D.

**EXHIBIT** *18*

lp
dictated/not read
fee for exam and report...$50

EXHIBIT: 18

798

I. AHMAD, M.D., F C.S.
8th FLOOR
50 PARK PLACE
NEWARK, N. J. 07102-3982
201 - 643-5900

SUITE 714
10 COMMERCE COURT
NEWARK, NEW JERSEY 07102

I. AHMAD, M.D., F.R.C.S.
Diplomate American Board of Orthopaedic Surgery
Orthopaedic and Hand Surgery

179

PHONE (201) 643-5900

October 21, 1981

Freeman & Bass
24 Commerce Street
Newark, NJ 07102

Re: Robert Lee
 62 Leslie Street
 East Orange, NJ
 File No. 31525-C

HISTORY: Age 42, employed in the construction industry for twenty years as a construction worker. He was expsed to dust, dirt, fumes, gases, noise, bending, lifting, stress and strain. He developed trouble with his chest, bhakk, armss legs, hands and feet. He has received no recent medical treatment. He last worked 4/81.

PAST HISTORY: 4/78, head injury, received award; 6/81, mouth injury; back injury 1978 and 1976, received award.

COMPLAINTS: Chest pains, shortness of breath, coughs, irritation of nose and throat, difficulty hearing, blurry vision; neck, back, arms, legs, hands and feet: pain on bending and lifting, pain on change of weather, stiffness, soreness, weakness; Nervous system: nervous, irritable, worried.

EXAMINATION: Both the hands and the legs were painful. Grasp was weak.

Muslce guarding was present inthe paravertebral region over the cervical spine. Vertebral spines were also tender. Flexion of the cervical spine was restricted by 5 degrees. Extension and lateral bending was painful. Trapezius muscles were painful and tender. There was no motor or sensory deficit in the upper extremities. Deep tendon reflexes were obtained. Circulation was satisfactory.

The lumbosacral spine was tender. Muscle guarding was present in this area. Flexion of the low back was restricted by 20 degrees. Extension was restricted by 10 degrees. Lateral bending was painful. Straight leg raising test and lasegue's test was painful. Squatting down was performed with difficulty . Standing on the toes and on the heels waw also done with difficulty. Deep taedao reflewes weee intact.

DIAGNOSIS:
 1. Cervical and lumbosacral sprain
 2. Fybromyositis

CONCLUSION: The disability is 30% of total.

Truly yours,

I. Ahmad, M.D.

de
dictated/not read
fee for exam and report.....$50

EXHIBIT 25 (1)

I AHMAD M.D. F.R.C.S
Diulomate American Board of Orthopedic Surgery
Orthopedic & Hand Surgery

$84 - 5 - 5 \sim$

**175**

Telephone (20) 647 5300

In FLOOR
50 PARK PLACE
NEWARK NEW JERSEY 07102

September 23, 1983

Freeman & Bass, Esq.
24 Commerce Street
Newark, NJ 07102

RE Eddie Felder
 576 Walnut Street
 Elizabeth, NJ
 35428-C

<u>AGE</u> 57

### HISTORY:

While employed to various companies over the years, he was exposed
to dust, dirt, fumes, gases, noise, bending, lifting, stress and strain.
He developed trouble with his chest, back, arms, legs, hands and feet.
He has received no recent medical treatment.

He last worked in 1980.

### PAST HISTORY:

He suffers with arthritis, high blood pressure, and stomach ailment;
hospitalized at Alexian Brothers emergency 1980 for knife wound to the
neck.

### COMPLAINTS:

Chest pains, shortness of breath, coughs, irritation of nose and
throat; difficulty in hearing, blurry vision; neck, back, arms, legs,
hands and feet; pain on bending, lifting and change of weather; stiff,
sore and weak; Nervous system, nervous, worried and irritable.

EXHIBIT *16*
Pg_____ Of_____

800

I AHMAD M D F R C S.
Diplomate American Board of Orthopedic Surgery
Orthopedic & Hand Surgery

8th FLOOR
PARK PLACE
EWARK NEW JERSEY 07102

**176**

Telephone (201) 643 5922

Page-2-
RE Eddie Felder

EXAMIANTION:

Both the arms and the legs were painful.

Muscle guarding was present in the paravertebral region over the cervical spine. Vertebral spines were also tender. Flexion of the cervical spine was restricted by 5 degrees. Extension and lateral bending were painful. Trapezius muscles were painful and tender. There was no motor or sensory deficit in the upper extremities. Deep tendon reflexes were obtained. Circulation was satisfactory.

The lumbosacral spine was tender. Muscle guarding was present in this area. Flexion of the low back was restricted by 20 degrees. Extension was restricted by 10 degrees. Lateral bending was painful. Straight Leg Raising Test and Lasegue's Test were painful. Squatting down was done with difficulty. Standing on the toes and on the heels was also done with difficulty. Deep tendon reflexes were intact.

DIAGNOSIS:

 1. Cervical and lumbosacral sprain
 2. Fibromyositis

CONCLUSION:

The disability is 30% of total.

Truly yours,

I. Ahmad, M.D.

na
dictated/not read
fee for exma and report...$100

I. AHMAD, M.D., F.R.C.S.
Diplomate American Board of Orthopedic Surgery
Orthopedic & Hand Surgery

8th FLOOR
50 PARK PLACE
NEWARK, NEW JERSEY 07102

Telephone: (201) 643-5900

141

March 2, 1983

Freeman & Bass, Esqs.
24 Commerce Street
Newark, New Jersey

RE: Frederick J. Bol
 805 Kennos Avenue
 Union, N.J.
 34420-C

AGE: 56

## HISTORY:

Employed by Spencer Kellogg-Division of Textron for 32 years until 6/18/82. He was exposed to dust, dirt, fumes, gases, noise, bending, lifting, stress and strain. He developed trouble with his chest, back, arms, legs, hands and feet. He has received no recent medical treatment. He last worked 6/18/82.

## PAST HISTORY:

Injury to back, received award; inhaled toxic fumes, 1978, received award; St. Barnabas on the follow occasions: 12/10/82, emergency care, one day, for nervous disorder; 9/81, emergency for heart and observation, same hospital, for hemorhoids; Union Memorial, 1978, one week, chest pains.

## COMPLAINTS:

Chest pains, shortness of breath, coughs, irritation of nose and throat; difficulty in hearing, blurry vision; neck, back, arms, legs, hands and feet; pain on bending and lifting, pain on change of weather, stiffness, soreness, weakness; Nervous system; nervous, irritable, worried.

802

3th FLOOR
50 PARK PLACE
NEWARK, NEW JERSEY 07102

Page -2-

Re: Frederick J. Bol

EXAMINATION:

 Both the arms and the legs were painful.

 Muscle spasms were present in the cervical region. Muscle
spasms did extend to the occipital area. The cervical curve was flattened.
Flexion of the cervical spine was restricted by 10 degrees. Extension
and lateral bending were moderately restricted. Trapezius and
sternomastoid muscles were tender. There was no motor or sensory
deficit in the upper extremities. Deep tendon reflexes were obtained.

 The lumbar curve was straightened. Flexion of the low
back was restricted by 30 degrees. Extension and lateral bending were
restricted by 15 degrees. Lasegue's Test was positive. Straight Leg
Raising Test and Bechterew's Tests were positive. Both the greater
sciatic notches were tender. Tenderness was also present over the
sacroiliac joints. Muscles spasms did extend from the paravertebral
region to both the buttocks. Hamstring muscles were spastic. Difficulty
was experienced while squatting down. Standing on the toes and on
the heels was done with difficulty.

DIAGNOSIS:

 1. Spinal Sprain
 2. Fibromyositis

CONCLUSION:

 The disability is 25% of total.

 Truly yours,

 I. Ahmad, M.D.

lp
jz
dictated/not read
fee for exam and report........ ......$75

I. AHMAD, M.D. F.R.C.S.
CN FLOOR
50 PARK PLACE
NEWARK, N. J. 07102-3952
201 - 643-5900

April 26, 1983

Freeman & Bass, Esqs.
24 Commerce Street
Newark NJ

RE: Samuel Daniels
 46 Evergreen Avenue
 Newark NJ

 File No. 12786-9 5

AGE: 51

HISTORY:

On 10/9/80, petitioner was employed by Pritchard Services as a maintenance worker. On that date he sustained injuries to his back and left side, while being exposed to chemicals and fumes in Hoffman LaRoche. He was also doing a great deal of bending and lifting at Hoffman LaRoche and this is when his injuries became worse.

Mr. Daniels was out of work and unable to work since February 1981.

PAST HISTORY:

Pulmonary problems; received 22½% of partial total pulmonary disability for chronic bronchitis; also received previous awards for binaural loss of hearing; arthritis, diabetes, hypertension and numerous awards.

COMPLAINTS:

Chest pains, shortness of breath, coughs, irritation of nose and throat; difficulty in hearing; blurry vision; neck, back, arms, legs, hands and feet; pain on bending and lifting, pain on change of weather, stiffness, soreness, weakness; Nervous system; nervous, irritable, worried.

**BEST COPY OBTAINABLE**

EXHIBIT 20
Pg 1 of 24

804

I. AHMAD, M.D., F.R.C.S.
8th FLOOR
50 PARK PLACE
NEWARK, N. J. 07102-3982
201 - 643-5900

150

Page -2-

RE: Samuel Daniels

EXAMINATION:

Both the hands were swollen. The distal joints of the little fingers were ankylosed. Both the knees were swollen. Flexion was restricted by less than 20 degrees.

Cervical spine was spastic. Muscle spasms did extend to the occipital area. Flexion of the cervical spine was restricted by 10 degrees. Extension and lateral bending were restricted by less than 5 degrees. Trapezius muscles were spastic. Sternomastoid muscles were painful on palpation. There was no gross neurological deficit in the upper extremities. Deep tendon reflexes were intact.

The lumbar curve was flattened. Flexion of the low back was restricted by 30 degrees. Extension was restricted by 15 degrees. Lateral bending was painful. Straight Leg Raising Test and Lasegue's Test were positive. Bechterew's and Linder's Tests were positive. Both sacroiliac joints were tender. Tenderness was present over the greater sciatic notches bilaterally. Muscle guarding did extend from the paravertebral area to both buttocks. Hamstring muscels were spastic. Squatting down was done with difficulty.

DIAGNOSIS:

1. Spinal sprain
2. Arthritis and myositis

CONCLUSION:

He is totally disabled as a physiological unit.

Truly yours,

I. Ahmad, M.D.

cr
Dictated/Not read
Fee for exam and report.....$100

BEST COPY OBTAINABLE

APPENDIX C

Dr. Sidney Friedman

ʊ5-17ʊʊ

25983-C
93

SIDNEY E. FRIEDMAN. M. D., P. A.
DAVID A WORTH. M. D.
900 STUYVESANT AVENUE
UNION N. J 07083
—
TELEPHONE 888-8034

SIDNEY E. FRIEDMAN. M D. F.C.C.P.
DIPLOMATE AMERICAN BOARD OF INTERNAL MEDICINE
CHEST DISEASES

DAVID A. WORTH, M.D
DIPLOMATE. AMERICAN BOARD OF INTERNAL MEDICINE
RHEUMATIC DISEASES

September 30, 1979

Freeman & Bass, Esqs.
24 Commerce St.
Newark, N. J. 07102

Re: Mary Franklin
File No 25983-C
Age 44

Dear Sir:

At your request Mrs. Franklin was examined in my office on August 29, 1979. She gave the following history:

Ms. Franklin worked in the cleaning industry as a presser and working around cleaning of garments from approximately 1953 until 1976. She originally worked at Schait & Sons Cleaners from 1953 until 1965. She subsequently worked at Golden Cleaners from 1966 to 1974. She last worked for the Twin Method Cleaners from 1974 until 1976. In connection with this work she did primarily pressing and she had to do repeated bending and lifting. She had to use her hands, arms and shoulders and she was on her feet all of the time. There was a great deal of stress and tension on her feet and legs in this work. She was exposed to steam, changes of temperature, perspiring, lint, dust and fumes from the dry cleaning chemicals.

PRESENT COMPLAINTS: **EXHIBIT** 22
1. Pulmonary: has a cough, coughs up phlegm, shortness of breath, chest pains on coughing
2. Nose & Throat: irritation of nose and throat; hoarseness of voice
3. Hearing: difficulty hearing soft sounds
4. Eyes: irritation of eyes; sensitivity of vision and to bright light
5. Neck & Shoulders: pain, stiffness and soreness of neck and shoulders; arthritis of neck and shoulders; pain on motion and in change of weather
6. Both Hands: swelling of joints of fingers; stiffness and soreness; arthritis of hands; loss of gripping power and loss of strength
5. Low Back: pain, stiffness and soreness of back; pain on bending and lifting; pain in change of weather; arthritis of back
6. Both Legs: has difficulty with circulation; pain on standing or walking; pain in change of weather
7. Hypertension: has hypertension; gets dizzy spells, fatigue and malaise
8. Cardiac: has enlargement of the heart; gets chest pains and has heart pains; pain radiating into the left shoulder and arm; palpatations
9. Psychiatric: is nervous, worried, depressed; concerned about her condition; feels helpless and unable to function; cannot take care of her personal details

PREVIOUS ILLNESS:
She has a loose productive cough productive of a yellow colored sputum. She estimates that

EXHIBIT 22 (s)

she expectorates about 1 teaspoonful of sputum daily. Her cough is mostly prevelant in the morning hours. She complains of chest tightness, chest pain and wheezing. She has to sleep on 2 pillows to help facilitate her breathing. She gets shortness of breath on walking 1 block and on climbing ½ flight of stairs. She has had hypertension for the past 5 years. She has a history of having arthritis in the past. In 1964 she had a bus accident and received a settlement. In June, 1979 she injured her left knee in a bus accident. She had her tonsils removed as a child.

She takes Hygroton for her hypertension. She does not smoke or drink alcoholic beverages. Her family history is non-contributory. She has one sister deceased and had hypertension.

PHYSICAL EXAMINATION
Appearance: she is a grossly obese woman, who was cooperative; she was coughing non-productively.

| | | |
|---|---|---|
| Height 5'4" | Weight 225 pounds | Pulse 88 |
| B.P. 160/94 | Resps. 18 per min. | Temp. 98.6 |

Head and neck: the neck is supple; there are no cervical nodes palpable
Eyes: there is a beginning of arcus senilis noted; the fundi show Grade I hypertensive changes; the pupils are equal and react normally
ENT: upper and lower dentures are in place; the tongue is clear; the posterior pharynx is somewhat injected
Chest and lungs: clear to examination
Cardiac: there is accentuation of the aortic component of the 2nd heart sound; regular rhythm is present with no murmurs
Abdomen: is very obese and protuberant; organs or masses are not palpable
Extremities: there are no varicose veins seen; there is no osteoarthritis noted

Urinalysis: S.G. 1.015; albumin and sugar - negative

Pulmonary function testing: the vital capacity is 1.4 liters which is 43% of predicated normal. The 1 second timed vital capacity is 1.4 liters; the 2 second timed vital capacity is 1.45 liters. The maximal mid-expiratory flow rate is 250 liters per minute. There is evidence for restrictive pulmonary disease.

Chest x-ray: disclosed cardiac enlargement. There is rounding of the left ventricular border pointing to left ventricular hypertrophy; the left diaphragm is elevated; both diaphragms however are smooth and clear; the bony structures of the thorax are normal; within the lungs there is an increase in bronchovascular markings; there is however no congestive heart failure.

CONCLUSIONS: Based upon the history and the findings, it is my opinion that Mrs. Franklin has chronic bronchitis for which I would estimate a disability of 30% of total. Based upon her history, it is my opinion that this chest condition is a result of the changes of temperature, steam, lint, dust and fumes exposures in her employments.

Based upon the history and the findings, it is my opinion that Mrs. Franklin has hypertensi cardiovascular disease for which I would estimate a disability of 25% of total. Based upon her history, it is my opinion that this cardiovascular condition developed and progressed as a result of both the physical and emotional stress and strain in her employments.

I recommend Ear, Nose and Throat, Ophthalmological, Orthopedic and Psychiatric consultations.

There is evidence for exogenous obesity.

Overall disability is total in this case.

Sincerely yours,

SIDNEY E. FRIEDMAN, M. D.
SEF/js

808

6 7 - ∂ 0 ...

SIDNEY E FRIEDMAN. M D.. P. A.

D A V D W O R T H . M D

900 STUYVESANT AVENUE

UN ON N J 07083

TELEPHONE 688 6334

102

NEWARK, N. J. 07103

FEB 18 1983

21170

SSA DISTRICT OFFICE

SIDNEY E. FRIEDMAN. M.D., F.C.C.P
DIPLOMATE. AMERICAN BOARD OF INTERNAL MEDICINE
CHEST DISEASES

DAVID A. WORTH. M D
DIPLOMATE, AMERICAN BOARD OF INTERNAL MEDICINE
RHEUMATIC DISEASES

August 23, 1979

Freeman & Bass, Esq.
24 Commerce St.
Newark, N.J. 07102

Re: Jessie Cooper Age 47
File No. 23305-C

Dear Sirs:

: your request I examined Mr. Cooper in my office on July 11, 1979. He gave the following history:

Mr. Cooper served in the U.S. Air Force from 1951 to 1953 as an armament technician loading bombs and bullets into planes. He was subjected to loud noise aswell as fumes, exhausts and difficult labor. He then worked for Rotec Plastics as a chemical mixer for 2½ years and was exposed to dusts, chemicals, gases and fumes. He then worked at Hillside Metal for about 8½ years mostly as an assembler. He worked with drills and wrenches, and was exposed to metal grinding, painting, dusts, gases, fumes and lifting and bending. Over the years he developed a cough and difficulty hearing. He also developed stiffness and soreness in his back. He then worked for Otis Elevator for about 6½ years as a car assembler and he had similar exposures. He also used a cutting torch. His symptoms grew worse as time passed. He left Otis in 1975, and has been working in the Sewer Department of the City of Newark, N.J. While at Otis Elevator he had an injury to his back in 1970, and received an award. He had another injury to his back in 1978 and received an award.

Present complaints:
1. Chest: cough, coughs up phlegm, chest pain, shortness of breath
2. Nose and throat: irritation and hoarse voice
3. Eyes: watering, tearing, light bothers eyes
4. Back: stiffness, pain and soreness, worse in bad weather
5. Hands, legs, arms: pain, stiffness, soreness
6. Nervous system: headaches, dizziness, nervous and concerned about his condition

Previous illness:
He has a cough, described as both dry and loose, in the mornings and evenings. He brings up about 1 teaspoonful of red phlegm when he coughs. He is short of breath if he walks a few blocks or climbs stairs. He uses 1 pillow to ease his breathing. He has developed varicose veins in both legs for the past 3 to 4 years. He has a hearing loss in the left ear. He has continued pain in his back, and takes treatments for this when he has done a great deal of bending. He has severe pain in his center back. He has a history of high blood pressure for the past 6 years but is on no medication at present. His parents are both deceased, cause is not known. He smokes ½ pack of cigarettes daily and drinks about 4 to 5 beers a day.

EXHIBITS

-2- Jessie Coope

NEWARK, N. J. ...
103
FEB 18 ...
2 1 7 0
SSA DISTRICT OFFICE

PHYSICAL EXAMINATION
Appearance: He is a tall, thin man, cooperative and pleasant

Height 71" Weight 158 pounds Resps. 16 pr. min.
Temp. 98.4 Pulse 89 B.P. 160/94

Head and neck:the neck is supple; there are no distended neck veins. There are no palpable cervical nodes
Eyes: pupils are equal and react normally. The sclerae are muddy. The fundi sho. grade I hypertensive changes
ENT: the anterior pillars are hyperemic with no exudate; the tongue is clear
Chest and lungs: clear to examination
Cardiac: regular rhythm with no murmurs or gallop sounds
Abdomen: soft, non-tender; no organs or masses are palpable
Skin: there is an acniform rash and hyperpigmented spots on the posterior chest. There is a scar on the right arm above the elbow
Extremities: mild varicose veins of both legs below the knees noted; there is no clubbing or peripheral edema

urinalysis:S.G. 1.018; albumin and sugar-negative

Chest x-ray: the heart size is within normal limits. The aortic bulb and aortic contour are normal. There is an increase in bronchovascular markings at both bases. The diaphragmatic borders are clear. The bony structures of the thorax appear normal.

Pulmonary function testing: the vital capacity is 2.2 liters which is 64.5% of predicted normal. The 1 second timed vital capacity is 2.0 liters; the 2 second timed vital capacity is 2.5 liters. The maximal mid-expiratory flow rate is 140 liters per minute.

CONCLUSIONS: Based upon the history and the findings, it is my opinion that Mr. Cooper has a chronic bronchitis for which I would estimate a disability of 25% of total. Based upon his history, it is my opinion that this chest condition is a result of the smoke, gases, dust and fumes exposure in his work.

Based upon the history and the findings, it is my opinion that Mr. Cooper has hypertensive vascular disease for which I would estimate a disability of 15% of total. Based upon his history, it is my opinion that this vascular condition developed and was aggravated by both the physical and emotional stress and strain in his work.

I recommend Opthalmological, Ear, Nose and Throat, Orthopedic and Neuropsychiatric consultations.

Overall disability is now greater due to previous awards.

Sincerely yours,

*Sidney E. Friedman, M.D.*

SIDNEY E. FRIEDMAN, M.D.
SEF:jb

SIDNEY E. FRIEDMAN, M. D., P. A.
DAVID A. WORTH, M. D.
900 STUYVESANT AVENUE
UNION, N J 07083
TELEPHONE. 688.6034

SIDNEY E. FRIEDMAN, M.D., F.C.C.P.
DIPLOMATE. AMERICAN BOARD OF INTERNAL MEDICINE
CHEST DISEASES

DAVID A. WORTH, M.D.
DIPLOMATE. AMERICAN BOARD OF INTERNAL MEDICINE
RHEUMATIC DISEASES

164

August 7, 1979

Freeman & Bass, Esqs.
24 Commerce St.
Newark, N. J. 07102

Re: Adolfo A. Cruz Age 38
16 Cortland St.
Newark, N. J.

Dear Sir:

At your request Mr. Cruz was examined in my office on July 27, 1979. He gave the following history:

Mr. Cruz was employed by the City of Newark, Park and Recreation for 5 years, until February 12, 1979 as a maintenance worker. He worked outdoors and was exposed to gases and fumes from the lawn mowers, changes of temperatures, dust, dirt, noise, wetness. He was required to do a lot of bending, lifting, standing and manipulations of his ahnds and feet.

Present Complaints:
1. Chest, lungs, nose, throat: cough, coughs up phlegm, chest pains, shortness of breath; irritation of nose and throat
2. Hearing: difficulty hearing soft sounds
3. Eyes: vision is blurry; light bothers his eyes; tears and runs water
4. Neck, shoulders, arms, legs, hands, feet: pains on bending, lifting, change of weather; stiffness, soreness and weakness
5. Nervous System: nervous, irritable, headaches, dizziness; trouble sleeping; worried about his conditions and about his future

Previous Illness:
He has a cough with occasional sputum production. He also has chest tightness occasional He gets shortness of breath after walking 4 blocks and on climbing stairs. He sleeps on 2 pillows at night to help facilitate his breathing. He has had high blood pressure for 1 year and was on medication but is no longer taking any medicine for this now. On February 13, 1979 he was involved in an auto accident and fractured his right clavicle, this case is pending. In March of 1979 he was hospitalized for 2 days at United Hospital for his collar bone; and again from April 8 to April 11, 1979 at St. James Hospital for his collar bone. About 7 or 8 years ago he injured his right arm in an auto accident and he received an award.

Exhibit B-18

He smokes 1 pack of cigarettes a day and drinks about 6 or 7 beers a day. His mother is alive at age 53; father died at age 54 from cancer; 6 brothers and 6 sisters alive and

EXHIBIT: B-18 (2,78)

-2- Adolfo A. Cruz 165

PHYSICAL EXAMINATION
Appearance: he is a slender Spanish man with good command of English; he has miltiple traumatic scars, one on the nose and left eyelid; there is a trachenstomy scar noted; there is a scar over right clavicle and right anticubital space and right forearm from accident.

| Height 5'9" | Weight 137 pounds | Pulse 84 |
| B.P. 140/94 | Resps. 16 per min. | Temp. 98.2 |

Head and neck: the neck is supple; there are no distended neck veins; there are no cervical nodes palpable
Eyes: the pupils are equal and react normally; extraocular muscles are intact
ENT: there are missing multiple teeth; thereis no exudate present
Chest and lungs: there are coarse breath sounds at both bases, expiratory rhonchi
Cardiac: regular rhythm with no cardiac murmurs or gallop sounds
Abdomen: is soft and non-tender; organs or masses are not palpable
Extremities: there is bilateral digital clubbing present since early childhood

Urinalysis: S.G. 1.019; albumin and sugar – negative

Pulmonary function testing: the vital capacity is 4.2 liters which is 96% of predicated normal. The 1 second timed vital capacity is 2.4 liters; the 2 second timed vital capac is 3.7 liters; the 3 second timed vital capacity is 4.02 liters. The maximal mid-expira' flow rate is 180 liters per minute.

Chest x-ray: disclosed a normal heart size; there is increased bronchovascular markings at both bases. The bony structures of the thorax are normal. The diaprhagmatic borders are sharp and clear.

Conclusions: based upon the history and the findings, it is my opinion that Mr. Cruz has chronic bronchitis for which I would estimate a disability of 25% of total. Based upon t history, it is my opinion that this chest condition is a result of the changes of temp- ature, wetness, gases, dust, dirt and fumes exposures in his work.

Based upon the history and the findings, it is my opinion that Mr. Cruz has hypertensiv. vascular disease for which I would estimate a disability of 15% of total. Based upon hi history, it is my opinion that this cardiovascular condition developed and progressed a: a result of both the physical stress and strain in his work.

I recommend Ophthalmoloigcal, Ear, Nose and Throat, Orthopedic, and Neuropsychiatric consultations.

This woman is totally disabled as a physiological industrial unit from all causes.

Sincerely yours,

SIDNEY E. FRIEDMAN, M. D.
SEF/js

812

)| 114
12786-C

SIDNEY E. FRIEDMAN, M. D., P. A.
DAVID A. WORTH, M. D.
900 STUYVESANT AVENUE
UNION, N J 07083
--
TELEPHONE: 688-6034

SIDNEY E. FRIEDMAN, M.D., F C.C P.
 DIPLOMATE, AMERICAN BOARD OF INTERNAL MEDICINE
 CHEST DISEASES

DAVID A. WORTH, M.D.
 DIPLOMATE, AMERICAN BOARD OF INTERNAL MEDICINE
 RHEUMATIC DISEASES

May 23, 1979

F reeman & Bass, Esqs.
2 4 Commerce St.
N ewark, N. J. 07102

 Re: Samuel Daniels
 File No: 12786-C
 Age 50

· D ear Sir:

A t your request Mr. Daniels was examined in my office on April 25, 1979. He gave the
f ollowing history:

Mr. Dan iels was in the employ of the North Jersey Community Health Center for 5 years,
until September 29, 1978 as a driver, laborer, garage collector and street sweeper. In
t h is work he was exposed to dust, fumes, gases, chemicals, noise, temperature changes
a nd wetness. He was. required to do a lot of bending, lifting, as well as standing and
manipulations of his hands and feet.

Present Complaints:
1. Chest, lungs, nose, throat: cough, coughs up phlegm, chest pains, shortness of
br eath; irritation of nose and throat
2. Hearing: difficulty hearing soft sounds
3. Eyes: vision is blurry; lights bothers his eyes; they tear and run water
4.Neck, shoulders, back, arms, legs, hands, feet: pains on bending, lifting, change of
w eather; stiffness, soreness and weakness
5.Nervous System: nervous, irritable, headaches, dizziness; worried about his conditions
a nd about his future

P revious Illness:
H e has a loose productive cough all the time. He estimates that he expectorates 1 table-
s poonful of yellowish colored sputum daily. He also has wheezing, chest tightness and
ch est pains. He gets shortness of breath on walking only 2 blocks and on climbing 2 flights
o f stairs. He has had intermittent hypertension in the past and this is managed with a low
s alt diet. He is also a mild diabetic which is also managed with diet.

S ince his last pulmonary and medical evaluation of several years ago his symptoms of cough,
e xpe ctoration and shortness of breath have increased in severity. In March of 1979 he re-
ce i ved an award for an injury to his back, neck and head; in 1973 he injured his left hand
a nd received an award; In 1973 received an award for injury to left thumb and right hand:
i n 1976 received an award for chest, lungs, noise, throat and hearing; in the 1950's he
re ceived an award for injury to 3rd finger of right hand.

-2- Samuel Daniels

H e smokes ½ pack of cigarettes a day for past 27 years but does not drink any alcoholic
b everages. His father died in auto accident at age 73; mother living at age 75 and in poor
h ealth; 4 sisters living and well; 2 are deceased, 1 from heart disease and 2 from cirrhosis
o f the liver.

PHYSICAL EXAMINATION
Appearance: he is mildly overweight and coughing a non-productive cough in the office

H eight 5'7" Weight 175 pounds Pulse 82
B.P 120/84 Resps. 18 per min. Temp. 98.2

H ead and neck: the neck is supple; there are no eervical nodes palpable
E y es: the slcerae are muddy; the fundi is clear; the pupils are equal and react normally
E NT: the posterior pharynx is injected; the tongue is clear
Ch est and lungs: there is a slight increase in the expiratory phase; the breath sounds are
ve ry coarse in both lower lung fields posteriorally; there are no rales or rhonchi
C ardiac: regular rhythm with no significant murmurs detected
S k in: there are scars over both elbows
A bdomen: is mildly obese, soft and non-tender; orgnas and masses are not palpable
E xtremities: there is no clubbing or edema

Uri nalysis: S. G. 1.018; albumin and sugar - negative

P ulmonary function testing: the vital capacity is 1.2 liters which is 28% of predicated
normal. The 1 second timed vital capacity is 1.2 liters; the 2 second timed vital capacity
i s 1. 3 liters. The maximal mid-expiratory flow rate is 115 liters per minute. The pul-
monary function tests points to severe restrictive pulmonary disease.

Ch est x-ray: disclosed the heart size is within normal limits of size. The aortic bulb
a nd contour are within normal limits; there is an increase in bronchovascular markings
i n both bases; the soft tissues and bony structures appear normal; there is very mild
li p ping of the thoracic spine indicative of degenerative osteoarthritis; the diaphragms
are within normal limits.

Conclusions: based upon the history and the findings, it is my opinion that Mr. Daniels has
ch ronic bronchitis for which I would estimate a disability of 25% of total. Based upon his
h istory , it is my opinion that this chest condition is a result of the temperature changes
g as es, chemicals, dust and fumes exposures in his work.

Based upon the history and the findings, it is my opinion that Mr. Daniels has diabetes
me llitus for which I would estimate a disability of 15% of total. Based upon his history,
i t is my opinion that this metabolic condition developed and progressed in severity due to
both the physical and emotional stress and strain in his work.

I recommend Orthopedic, Ophthalmological, Ear, Nose and Throat, and Neuropsychiatric
consultations.

Th ere is a history of labile hypertension.

814

116

Samuel Daniels

T his man is totally disabled as a physiological industrial unit from all causes.

Overall disability is now greater due to previous awards and is also greater due to subs equent exposure.

Very truly yours,

SIDNEY E. FRIEDMAN, M. D.
SEF/js

815

83-4091

STUYVESANT MEDICAL ASSOCIATES

900 STUYVESANT AVENUE

UNION, N. J. 07083

TELEPHONE: 688-6034

111

SIDNEY E. FRIEDMAN, M.D., F.C.C.P
DIPLOMATE, AMERICAN BOARD OF INTERNAL MEDICINE
CHEST DISEASES

May 3, 1983

JEFFREY N. FELDMAN, M.D.
DIPLOMATE, AMERICAN BOARD OF INTERNAL MEDICINE
RENAL DISEASES AND HYPERTENSION

Freeman & Bass, Esq.
24 Commerce St.
Newark, N.J. 07102

Re: Philip Rogers Age 57
File No. 34321-C

Dear Sirs:

At your request Mr. Rogers was examined in my office on March 25, 1983. He gave the following history:

Mr. Rogers worked for Art Metal from 1964 to 1982 as a welder. In his work he was exposed to dusts, gases, smoke and fumes as well as bending and lifting. He was also exposed to loud noise. He developed high blood pressure which grew worse. He developed a cough and fainting spells which also grew worse. He had headaches and dizziness and shortness of breath. He was hospitalized at St. Michael's Hospital in July, 1982 for fainting and high blood pressure. He then returned to work, and he worked until August 1982 when he was unable to continue working. He was hospitalized for 3 weeks in November, 1978 for pulmonary problems. He also has arthritis. He complains of a cough, shortness of breath and chest pain. He has irritation of his eyes, ears, nose and throat. He has pain in his back. He has hypertension and dizziness, and is nervous and worried about his conditions.

He has a loose, productive cough with white sputum, worse at night. He has wheezing and is short of breath climbing stairs, as well as walking ½ block. He is also short of breath walking, climbing stairs, bending and lifting, and has chest pain on exertion. He had pneumonia in 1978 and was hospitalized at College Hospital. He has had hypertension for 10 years. He was hospitalized for questionable heart disease in 1982 at St. Michael's Hospital. He smokes 2 packs of cigarettes a week for 20 years and drinks occasionally. He is on medication for hypertension. He is unable to work because of ill health.

PHYSICAL EXAMINATION
Appearance:he is a short, thin man

Height 5'5" Weight 128 pounds Resp. 16 per min.
Temp. 98.4 Pulse 80 B.P. 130/80

Head and neck: the neck is supple; there is no adenopathy or thyromegaly
Eyes: pupils are equal and react normally; there is bilateral arcus senilis
ENT: clear to examination
Chest and lungs: no rales, rhonchi or wheezes
Cardiac: regular rhythm with no murmurs
Abdomen: soft, non-tender; no organs or masses palpable
Extremities:no clubbing, cyanosis or edema

Urinalysis:S.G. 1.021; albumin and glucose - 0

Electrocardiogram: the rate is 82 per minute. The T-wave is flat in lead 3, initially inverted in lead aVF. There is T-wave flattening in the left precordial leads. The EKG is abnormal due to non-specifi c T-wave abnormalities.

Chest x-ray:the heart is globular in shape, normal in size. There is a prominent left ventricular border. The ascending and descending aorta are tortuous, indicative of athero-sclerotic changes. The diaphragms are clear. There is no evidence for pleural thickening or congestive heart failure. Within the lungs the pulmonary markings are prominent. The skeletal structures of the thorax appear normal.

Pulmonary function testing: the vital capacity is 2.35 liters which is 56% of predicted normal. The 1 second timed vital capacity is 1.5 liter; the 2 second timed vital capa-city is 2.05 liters; the maximal flow rate is 1.05 liter per second. There is evidence for restrictive and obstructive disease.

CONCLUSIONS:

Based upon the history and the findings, it is my opinion that Mr. Rogers has a chronic bronchitis for which I would estimate a disability of 25% of total. Based upon his history it is my opinion that this chest condition is a result of the dirt, dusts and fumes exposure in his work at Art Metal Co. His symptoms and the chest x-ray substantiate the diagnosis along with the pulmonary function testing.

Based upon the history and the findings, it is my opinion that Mr. Rogers has hypertensive cardiovascular disease for which I would estimate a disability of 20% of total. Based upon his history it is my opinion that this cardiovascular condition developed and pro-gressed in severity due to the physical and emotional stress and strain in his work.

I recommend orthopedic, opthalmological, otolaryngeal and neuropsychiatric consultations.

This man is totally disabled as a physiological industrial unit from all causes.

Sincerely yours,

SIDNEY E. FRIEDMAN M.D.
SEF:jb

817

APPENDIX D

Dr. Warren Klein

_83-1700_

, PRACTICE LIMITED TO OPHTHALMOLOGY BY APPOINTMENT

WARREN M. KLEIN, M.D., P.A. 89
S. SCANNAPIEGO, M.D., P.A.
230 W. JERSEY STREET
ELIZABETH, N. J. 07302
TELEPHONE 289-1166

September 5, 1979

Freeman & Bass
24 Commerce Street
Newark, N.J.

Re: Franklin Mary

Gentlemen:

The following is a report of my examination of the patient in the above captioned
case made in my office on September 4, 1979 at your request.

PATIENT'S HISTORY: The patient is a 44 year old female who worked for the Schait
& Son Cleaners and for the Golden Cleaners. She was exposed to dust, fumes and
chemicals and now complains of blurred vision, sensitivity to light and teary and
watery eyes.

My examination of the patient's eyes revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| Uncorrected Vision | 20/200 | 20/70- |
| Corrected Vision | 20/20- | 20/20- |
| External | Normal | Normal |
| Conjunctivas | Injected with dilated blood vessels | Injected with dilated blood vessels |
| Corneas | Clear | Clear |
| Anterior Chambers | Normal | Normal |
| Extraocular Movements | Normal | Normal |
| Intraocular Tensions | Normal | Normal |

...continued

**EXHIBIT 20**

EXHIBIT: _20 (3)_

818

PRACTICE LIMITED TO OPHTHALMOLOGY

WARREN M. KLEIN, M.D., P.A.
S. SCANNAPIEGO, M.D., P.A.
230 W. JERSEY STREET
ELIZABETH, N. J. 07202

TELEPHONE 289-1166

September 5, 1979

Freeman & Bass
Page 2
Franklin Mary

| | RIGHT | LEFT |
|---|---|---|
| Pupils | Normal | Normal |
| Iris | Normal | Normal |
| Lens | Normal | Normal |
| Vitreous | Normal | Normal |
| Eyegrounds | Normal | Normal |

DIAGNOSIS: 1) Chronic conjunctivitis of both eyes

OPINION: The irritants and microtrauma have resulted in a 10% permanent partial total disability.

Respectfully submitted,

Warren M. Klein, M.D.
S. Scannapiego, M.D.

WK/mm

OPHTHALMOLOGY

100

TELEPHONE 289-1166

WARREN M KLEIN M D . P A.
SAVEREN SCANNAPIEGO. M.D.. P.A.
230 W JERSEY ST.
ELIZABETH, N. J 07202

August 10, 1979

Freeman & Bass
24 Commerce Street
Newark, N.J.

Re: Cooper Jessie

Gentlemen:

The following is a report of my examination of the patient in the above captioned case made in my office on August 6, 1979 at your request.

PATIENT'S HISTORY: The patient is a 47 year old male who worked for the Rotec Plastics Company mixing chemicals for two and a half years. She was exposed to dust, fumes and chemicals. She also worked for the Otis Elevator Company with similar exposures. She presently complains of blurred vision, sensitivity to light and teary and watery eyes.

My examination of the patient's eyes revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| Uncorrected Vision | 20/25 | 20/25 |
| Corrected Vision | same | same |
| External | Normal | Normal |
| Conjunctivas | Injected with dilated blood vessels | Injected with dilated blood vessels |
| Corneas | Pterygium | Clear |
| Anterior Chambers | Normal | Normal |
| Extraocular Movements | Normal | Normal |
| Intraocular Tensions | Normal | Normal |

...continued

EXHIBITS

820

TELEPHONE 239-1188

OPHTHALMOLOGY

WARREN M. KLEIN. M.D., P.A.
SAVEREN SCANNAPIEGO. M.D., P.A.
230 W. JERSEY ST.
ELIZABETH, N. J. 07202

101

August 10, 1979

Freeman & Bass
Page 2
Cooper Jessie

| | RIGHT | LEFT |
|------------|--------------------|--------|
| Pupils | Normal | Normal |
| Iris | Normal | Normal |
| Lens | Incipient cataract | Normal |
| Vitreous | Normal | Normal |
| Eyegrounds | Normal | Normal |

DIAGNOSIS: 1) Chronic conjunctivitis of both eyes
2) Pterygium of the right eye
3) Cataracts of the right eye

OPINION: The irritants and microtrauma at work cause chronically inflammed eyes.
This directly aggravates eyes weakened by incipient cataracts and a right pterygium.
These result in 35% permanent partial total disability.

Respectfully submitted,

Warren M. Klein, M.D.
S. Scannapiego, M.D.

WK/mm

* PRACTICE LIMITED TO OPHTHALMOLOGY

BY APPOINTMENT

WARREN M. KLEIN, M.D., P.A.
S. SCANNAPIEGO, M.D., P.A.
230 W. JERSEY STREET
ELIZABETH, N. J. 07202
TELEPHONE 289-1166

166

August 23, 1979

Freeman & Bass
24 Commerce Street
Newark, N.J.

Re: Cruz Adolpo

Gentlemen:

The following is a report of my examination of the patient in the above captioned case made in my office on August 20, 1979 at your request.

PATIENT'S HISTORY: The patient is a 38 year old male who worked for the City of Newark for five years. He was exposed to dust, fumes and gases and presently complains of blurred vision, sensitivity to light and teary and watery eyes.

My examination of the patient's eyes revealed the following:

| | RIGHT | LEFT |
| --- | --- | --- |
| Uncorrected Vision | 20/25 | 20/25 |
| Corrected Vision | same | same |
| External | Normal | scarring and deformity of left eyebrow from old motor vehicle accide |
| Conjunctivas | Injected with dilated blood vessels | Injected with dilated blood vessels |
| Corneas | Clear | Corneal microscar |
| Anterior Chambers | Normal | Normal |
| Extraocular Movements | Normal | Normal |
| Intraocular Tensions | Normal | Normal |

...continued

Exhibit B-19

EXHIBIT: B-19 (2pg)

822

PRACTICE LIMITED TO OPHTHALMOLOGY

BY APPOINTMENT

WARREN M KLEIN. M.D., P.A.
S. SCANNAPIEGO. M.D., P.A.
230 W JERSEY STREET
ELIZABETH, N. J. 07202
---
TELEPHONE 289-1166

August 23, 1979

Freeman & Bass
Page 2
Cruz Adolpo

| | RIGHT | LEFT |
|------------|--------|--------|
| Pupils | Normal | Normal |
| Iris | Normal | Normal |
| Lens | Normal | Normal |
| Vitreous | Normal | Normal |
| Eyegrounds | Normal | Normal |

DIAGNOSIS: 1) Scarring and deformity of left eyebrow
 2) Chronic conjunctivitis of both eyes
 3) Left corneal microscar

OPINION: The irritants and microtrauma at work cause chronically inflammed eyes.
This aggravates eyes already weakened by scarring and cosmetic deformity from an
old injury. These result in 27¼% permanent partial total disability.

Respectfully submitted,

Warren M. Klein, M.D.
S. Scannapiego, M.D.

WK/mm

87-581 OPHTHALMOLOGY

**289-1168**

WARREN M. KLEIN, M.D., P.A.
SAVEREN SCANNAPIEGO, M.D., P.A. 1A6
230 W. JERSEY ST.
ELIZABETH, N. J. 07202

March 10 1983

Freeman and Bass
24 Commerce Street
Newark N.J.

Re: Bol Frederick
·34420-C

Gentlemen:

The following is a report of my examination of the patient in the above captioned
case made in my office on March 7 1983 at your request.

**PATIENT'S HISTORY:** The patient is a 57 year old male who worked for Spencer Kellogg
for 32 years as a warehouse supervisor. He was exposed to dust, fumes and dirt
and complains of blurred vision, red, irritated, burning, tearing, watery eyes and
mucus in his eyes at times.

My examination of the patient's eyes revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| Uncorrected Vision | 20/70 | 20/70 |
| Corrected Vision | 20/20 | 20/20 |
| External | Blepharitis | Blepharitis |
| Conjunctivas | Injected with dilated blood vessels | Injected with dilated blood vessels |
| | Roughened, scarred Mucus threads | Roughened, scarred Mucus threads |
| Corneas | Clear | Clear |
| Anterior Chambers | Normal | Normal |
| Extraocular Movements | Normal | Normal |
| Intraocular Tensions | Normal | Normal |

...continued

EXHIBIT NO. 21. (2)

824

ase-1166

147 OPHTHALMOLOGY

WARREN M. KLEIN, M.D., P.A.
SAVEREN SCANNAPIEGO, M.D., P.A.
230 W. JERSEY ST.
ELIZABETH, N. J. 07202

March 10 1983

Freeman and Bass
24 Commerce Street
Newark N..J .
Page 2

Re: Bol Frederick J.

| | RIGHT | LEFT |
|---|---|---|
| Pupils | Normal | Normal |
| Iris | Normal | Normal |
| Lens | Incipient cataract | Incipient cataract |
| Vitreous | Normal | Normal |
| Eyegrounds | Normal | Normal |

DIAGNOSIS: 1) Chronic conjunctivitis of both eyes
2) Chronic blepharitis of both eyes
3) Incipient cataracts of both eyes

OPINION: The irritants and microtrauma at work cause chronic conjunctivitis and chronic blepharitis of both eyes with associated scarring. Developing cataracts in both eyes are unrelated to work. The structural changes due to work exposure result in 15% permanent partial total disability.

Respectfully submitted,

Warren M. Klein, M.D.
S. Scannapiego, M.D.

4-979 · 93

TELEPHONE 289-1166 OPHTHALMOLOGY

WARREN M. KLEIN, M.D., P.A.
SAVEREN SCANNAPIEGO, M.D., P.A.
230 W. JERSEY ST.
ELIZABETH, N. J. 07202

November 4 1982

Freeman and Bass
24 Commerce Street
Newark N.J.

Re: Munha Maria
33872-

Gentlemen:

The following is a report of my examination of the patient in the above captioned case made in my office on November 1, 1982 at your request.

PATIENT'S HISTORY: The patient is a 37 year old female who worked for Ambassador Manufacturing Company for 13 years as a machine operator. She was exposed to dust, fumes and dirt and now complains of blurred vision, red, irritated, burning, tearing, watery eyes and mucus in her eyes at times.

My examination of the patient's eyes revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| Uncorrected Vision | 20/100 | 20/100 |
| Corrected Vision | 20/25 | 20/20 |
| External | Blepharitis | Blepharitis |
| Conjunctivas | Injected with dilated blood vessels | Injected with dilated blood vessels |
| | Roughened, scarred Mucus threads | Roughened, scarred Mucus threads |
| Corneas | Clear | Clear |
| Anterior Chambers | Normal | Normal |
| Extraocular Movements | Normal | Normal |
| Intraocular Tensions | Normal | Normal |

...continued

Exhibit 5 (4 F.)

TELEPHONE 289-1166

OPHTHALMOLOGY

**WARREN M. KLEIN. M.D., P.A.**
**SAVEREN SCANNAPIEGO, M.D., P.A.**
230 W. JERSEY ST.
ELIZABETH, N. J. 07202

November 4 1982

Freeman an Bass
Page 2
Munha Maria

| | RIGHT | LEFT |
|---|---|---|
| Pupils | Normal | Normal |
| Iris | Normal | Normal |
| Lens | Normal | Normal |
| Vitreous | Normal | Normal |
| Eyegrounds | Normal | Normal |

DIAGNOSIS: 1) Chronic conjunctivitis of both eyes
2) Chronic blepharitis of both eyes

OPINION: The irritants and microtrauma at work cause chronic conjunctivitis and chronic blepharitis of both eyes with associated scarring resulting in 12½% permanent partial total disability.

Respectfully submitted,

Warren M. Klein, M.D.
S. Scannapiego, M.D.

APPENDIX E

Dr. Atif Ghander

83-1700

ATIF Z. GHANDER, M.D., F.A.C.S.
PROFESSIONAL ASSOCIATION
230 W JERSEY STREET
ELIZABETH, N. J. 07201

TELEPHONE 289-1166

91

DIPLOMATE AMERICAN BOARD
OF OTOLARYNGOLOGY

FELLOW AMERICAN COLLEGE
OF SURGEONS

FELLOW ROYAL COLLEGE
OF SURGEONS, ENGLAND

OTOLARYNGOLOGY
HEAD AND NECK SURGERY

MAXILLO-FACIAL AND RELATED
PLASTIC RECONSTRUCTIVE SURGERY

AUDIOLOGY

September 7, 1979

Freeman & Bass
24 Commerce Street
Newark, N.J.

Re: Franklin Mary

Gentlemen:

The following is a report of my examination of the patient in the above captioned
case made in my office on September 4, 1979 at your request.

PATIENT'S HISTORY: The patient is a 44 year old female who stated that,"during
the course of my job, I was exposed to dust, fumes and loud noises and noticed a
gradual decrease in my hearing, dizzy spells and ringing in my ears. " I have had
no previous trouble, no injury to my ears and no history of deafness in my family."

My examination of the patient's ears revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| External Canal | Normal | Normal |
| Drums | Normal | Normal |
| Discharge | None | None |
| Rinne | Positive | Positive |
| Weber | Heard, but not referred | |
| Hearing | 35% | 35% |

Neck: No palpable masses
Anterior Rhinoscopy; Deviated right septum. Congested and roughened mucosa.
Indirect nasopharyngoscopy: Congested and roughened mucosa.
Indirect laryngoscopy: Congested and roughened mucosa. Mobile vocal cords.

DIAGNOSIS: 1) Bilateral hearing impairment
2) Rhinosinustis
3) Nasopharyngitis
4) Tinnitus

**EXHIBIT 21**

REMARKS: Condition due to exposure described. I estimate a permanent disability of
35% for both ears. Also due to subjective symptoms of tinnitus and nasopharyngitis,
I estimate a 10% permanent partial total disability.

Sincerely yours,

Atif Z. Ghander, M.D.,F.R.C.S,F.A.C.S.

AG/mm

EXHIBIT: 21 (2)

NAME _____ DATE 5-4-79 BY_____

NORTHEASTERN INSTRUMENTATION
8370 A 78th St., Middle Village, New York 11379
(212) 894-5875

Audiometer Sales & Service

84-979
97

ATIF Z. GHANDER, M.D., F.A.C.S.
PROFESSIONAL ASSOCIATION
230 W. JERSEY STREET
ELIZABETH, N. J. 07201

TELEPHONE 289-1166

DIPLOMATE AMERICAN BOARD
OF OTOLARYNGOLOGY

FELLOW AMERICAN COLLEGE
OF SURGEONS

FELLOW ROYAL COLLEGE
OF SURGEONS, ENGLAND

November 5 1982

OTOLARYNGOLOGY
HEAD AND NECK SURGERY
MAXILLO-FACIAL AND RELATED
PLASTIC RECONSTRUCTIVE SURGERY
AUDIOLOGY

Freeman and Bass
24 Commerce Street
Newark N.J.

Re: Munha Maria
33872-

Gentlemen:

The following is a report of my examination of the patient in the above captioned case made in my office on November 1 1982 at your request.

PATIENT'S HISTORY: The patient is a 37 year old female who was exposed to dust, fumes and loud noises at work. She began to have difficulty with her hearing and breathing, dizzy spells and ringing in the ears. She had no previous toruble or injury to her ears.

My examination of the patient's ears revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| External Canal | Normal | Normal |
| Drums | Normal | Normal |
| Discharge | None | None |
| Rinne | Positive | Positive |
| Weber | Heard but not referred | |
| Hearing | 40% | 32% |

Neck: no palpable masses
Anterior Rhinoscoy: Deviated left septum. Congested and roughened mucosa
Indirect nasopharyngoscopy: Congested and roughened mucosa
Indirect laryngoscopy: Congested and roughened mucosa. Mobile vocal cords

DIAGNOSIS: 1) Noise induced, bilateral sensorineural hearing impairment
2) Tinnitus
3) Rhinosinusitis
4) Nasopharyngitis

REMARSK: Condition due to exposure described. I estimate a permanent disability of 40% for the right ear and 32% for the left ear. Also due to subjectiveaymppoms of tinnitus, I estimate a 7½% permanent partial total disability and for mucosal changes of rhinosinusitis and nasophryngitis, I estimate a 7½% permanent partial total disability.

Sincerely yours,

Atif Z.Ghander, M.D.,F.R.C.S.,F.A.C.S.
Exhibit

**830**

ATIF Z. GHANDER, M.D., F.A.C.S.
PROFESSIONAL ASSOCIATION
230 W. JERSEY STREET
ELIZABETH N J. 07201

TELEPHONE 289-1166

168

DIPLOMATE AMERICAN BOARD
OF OTOLARYNGOLOGY

FELLOW AMERICAN COLLEGE
OF SURGEONS

FELLOW ROYAL COLLEGE
OF SURGEONS, ENGLAND

OTOLARYNGOLOGY
HEAD AND NECK SURGERY

MAXILLO-FACIAL AND RELATED
PLASTIC RECONSTRUCTIVE SURGERY

AUDIOLOGY

August 23, 1979

Freeman & Bass
24 Commerce Street
Newark, N.J.

Re: Cruz Adolfo

Gentlemen:

The following is a report of my examination of the patient in the above captioned case made in my office on August 20, 1979 at your request.

PATIENT'S HISTORY: "During the course of my job, I was exposed to dust, fumes and loud noises and noticed a gradual decrease in my hearing, dizzy spells and ringing in my ears. I have had no previous trouble, no injury to my ears and no history of deafness in my family."

My examination of the patient's ears revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| External Canal | Normal | Normal |
| Drums | Normal | Normal |
| Discharge | None | None |
| Rinne | Positive | Positive |
| Weber | Heard, but not referred | |
| Hearing | 40% | 40% |

Neck: No palpable masses
Anterior Rhinoscopy: Deviated right septum. Congested and roughened mucosa.
Indirect nasopharyngoscopy: Congested and roughened mucosa.
Indirect laryngocopy: Congested and roughened mucosa. Mobile vocal cords.

DIAGNOSIS: 1) Bilateral hearing impairment
 2) Rhinosinusitis
 3) Nasopharyngitis
 4) Tinnitus

REMARKS: Condition due to exposure described. I estimate a 40% permanent disability for both ears and due to subjective symptoms of tinnitus and nasopharyngitis, I estimate a 10% permanent partial total disability.

Sincerely yours,

Atif Z. Ghander, M.D.,F.R.C.S,F.A.C.S.

AG/mm

EXHIBIT: B-20 (2pgs)

ATIF Z. GHANDER, M.D., F.A.C.S
PROFESSIONAL ASSOCIATION
A. . . . . STREET
ELIZABETH, N.J 07201
TELEPHONE 289-1166

98

DIPLOMATE AMERICAN BOARD
OF OTOLARYNGOLOGY

FELLOW AMERICAN COLLEGE
OF SURGEONS

FELLOW ROYAL COLLEGE
OF SURGEONS, ENGLAND

OTOLARYNGOLOGY
HEAD AND NECK SURGERY

MAXILLO-FACIAL AND RELATED
PLASTIC RECONSTRUCTIVE SURGERY

AUDIOLOGY

August 9, 1979

Freeman & Bass
24 Commerce Street
Newark, N.J.

Re: Cooper Jessie

Gentlemen:

The following is a report of my examination of the patient in the above captioned case made in my office on August 6, 1979 at your request.

PATIENT'S HISTORY:"During the course of my job, I was exposed to dust, fumes and loud noises and noticed a gradual decrease in my hearing, dizzy spells and ringing in my ears. I have had no previous trouble, no injury to my ears and no history of deafness in my family."

My examination of the patient's ears revealed the following:

| | RIGHT | LEFT |
|---|---|---|
| External Canal | Normal | Normal |
| Drums | Normal | Normal |
| Discharge | None | None |
| Rinne | Positive | Positive |
| Weber | Heard, but not referred | |
| Hearing | 40% | 40% |

Neck: No palpable masses
Anterior Rhinoscoy: Deviated right septum. Congested and roughened mucosa.
Indirect nasopharyngoscopy: Congested and roughened mucosa.
Indirect laryngoscopy: Congested and roughened mucosa. Mobile vocal cords.

DIAGNOSIS: 1) Bilateral hearing impairment
2) Tinnitus
3) Rhinosinusitis
4) Nasopharyngitis

REMARKS: Condition due to exposure described. I estimate a permanent disability of 40% for both ears. Also due to subjective symptoms of tinnitus and nasopharyngitis, I estimate a 10% permanent partial total disability.

Respectfully submitted,

Atif Z. Ghander, M.D.,F.R.C.S,F.A.C.S.

AG/mm

EXHIBITS

99

NORTHEASTERN INSTRUMENTATION

Audiometer Sales & Service

**ATIF Z. GHANDER, M.D., F.A.C.S.**
**PROFESSIONAL ASSOCIATION**
**230 W. JERSEY STREET**
**ELIZABETH, N. J. 07201**

**(TELEPHONE 389-1166)**

DIPLOMATE AMERICAN BOARD
OF OTOLARYNGOLOGY

FELLOW AMERICAN COLLEGE
OF SURGEONS

FELLOW ROYAL COLLEGE
OF SURGEONS, ENGLAND

OTOLARYNGOLOGY
HEAD AND NECK SURGERY

MAXILLO-FACIAL AND RELATED
PLASTIC RECONSTRUCTIVE SURGERY
AUDIOLOGY

175

February 15, 1982

Freeman and Bass
24 Commerce Street
Newark N.J.

Re: Lee Robert
31525-C

Gentlemen:

The following is a report of my examination of the patient in the above captioned case made in my office on February 8, 1982 at your request.

CHIEF COMPLAINTS: Difficulty hearing, breathing, dizzy spells, ringing in the ears
PATIENT'S HISTORY: During the course of my job, I was exposed to dust, fumes and loud noises and began to have difficulty with my hearing and breathing, dizzy spells and ringing in the ears. In April, 1981 I was treated at the College Hospital for a gun shot wound.

My examination of the patient's ears revealed the following:

| | RIGHT | LEFT |
|------------------|--------------------------|-----------|
| External Canal | Normal | Normal |
| Drums | Normal | Normal |
| Discharge | None | None |
| Rinne | Positive | Positive |
| Weber | Heard but not referred | |
| Hearing | 32% | 35% |

Neck: no palpable masses
Anterior Rhinoscopy: Deviated left septum. Congested and roughened mucosa
Indirect nasopharyngoscopy: Congested and roughened mucosa.
Indirect laryngoscopy: Congested and roughened mucosa. Mobile vocal cords

DIAGNOSIS: 1) Noise induced, bilateral sensorineural hearing impairment
2) Tinnitus
3) Rhinosinusitis
4) Nasopharyngitis

REMARKS: Condition due to exposure described. I estimate a permanent disability of 32% for the right ear and 35% for the left ear. Also due to subjective symptoms of tinnitus, I estimate a 10% permanent partial total disability and for mucosal changes of rhinosinusitis and nasopharyngitis, I estimate a 10% permanent partial total disability.

Sincerely yours,

Atif Z. Ghander, M.D.,F.R.C.S,F.A.C.S.

AG/mm

EXHIBIT 22