Eartie **BRADLEY**, Plaintiff,

v.

Otis R. **BOWEN**, M.D., Secretary of **Health and Human Services,** **Defendant.**

**Civ. A. No. 85–5867 (CSF).**

United States District Court, D. New Jersey.

July 14, 1987.

Freeman & Bass By: Joel Solow, Newark, N.J., for plaintiff.

Samuel A. Alito, Jr., U.S. Atty. By: Stephanie A. Ebers, Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This is an action brought pursuant to Section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services which denied plaintiff's application for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) benefits. The Secretary's decision is supported by substantial evidence; therefore, the decision below is affirmed.

Plaintiff filed an application for a period of disability, disability benefits, and SSI benefits on March 28, 1984. The applica-

tion was denied initially (Tr. 52–55) and on reconsideration (Tr. 57–60). Plaintiff requested a hearing, which was held on April 18, 1985 (Tr. 109). The administrative law judge (ALJ) before whom plaintiff appeared considered the case *de novo* and on July 18, 1985, found that plaintiff was not under a disability (Tr. 7–13). The decision of the ALJ became the final decision of the Secretary when it was approved by the Appeals Council on September 6, 1985 (Tr. 2).

Disability is defined both for purposes of disability insurance and SSI benefits as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A) and 1382c(a)(3)(A), *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir.1985). The applicable standards for disability evaluation under Section 423 are enumerated in 20 C.F.R. § 404.1520.[1] These standards involve the weighing of four factors: (1) objective medical evidence; (2) diagnoses or medical opinions based on such medical facts; (3) the claimant's subjective testimony of pain and disability; and (4) the claimant's education, age and work experience. *Lizzio v. Secretary of Health, Education and Welfare*, 592 F.Supp. 683, 685 (D.N.J. 1982); *Torres v. Harris*, 502 F.Supp. 518, 521 (E.D.Pa.1980).

The application of these standards of disability evaluation involves the shifting of burdens of proof. *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir.1983). The Supreme Court recently clarified these burdens of proof in *Otis R. Bowen, Secretary of Health and Human Services v. Janet I. Yuckert*, —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). "The claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or

combination of impairments ..." which fall within the meaning of the Statute. "If the process ends at step two, the burden of proof never shifts to the Secretary" and the claimant does not receive benefits. If claimant carries these burdens or the impairment is conclusively presumed to be disabling, claimant's burden of proof is met. If, however, claimant's impairment is not "conclusively" severe, under the criteria set forth in the Revised Listing of Impairments, 20 C.F.R. Appendix 1, Subpart P, Regulation No. 4, step three is unsatisfied, and the claimant must prove "at step four that the impairment prevents him from performing his past work." The "Secretary bears the burden of proof at step five, [to determine] whether the claimant is able to perform work available in the national economy." The Supreme Court states further that "[t]his allocation of burden of proof is well within the Secretary's exceptionally broad authority under the Statute." *Id.* —— U.S. at ——, n. 5, 107 S.Ct. at 2294, n. 5.

This court, empowered by 42 U.S.C. § 405(g), may review the final determination of the Secretary and enter judgment upon the pleadings and transcript of the record. It is beyond the narrow scope of this court's reviewing power, however, to reweigh the evidence upon which such a determination was based. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). In reviewing findings of disability, any findings of fact of the Secretary must be accepted as conclusive by the reviewing court if supported by substantial evidence. *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir.1980).

The Supreme Court has defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting*

---

**1.** A person is disabled within the meaning of this statute "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, edu-

cation, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

*Consolidated Edison v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Inferences and conclusions which are drawn from the basic facts are also afforded the conclusive effect of the substantial-evidence rule. *Franklin v. Heckler*, 598 F.Supp. 784, 789 (D.N.J.1984); *see also Jolley v. Weinberger*, 537 F.2d 1179, 1181 (4th Cir.1976). "Even if the Secretary's factual findings are supported by substantial evidence," however, "[a] court may review whether the administrative determination was made upon correct legal standards." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir.1983) (*quoting Curtin v. Harris*, 508 F.Supp. 791, 793 (D.N.J. 1981)).

Plaintiff contends that she is entitled to benefits based on disability due to weak knees (Tr. 48). At the time of the administrative hearing, plaintiff was 42 years old and had an eleventh-grade education (Tr. 25).

Plaintiff testified that she began work in 1977 as a nurse's aide (Tr. 25–26). As such, she was responsible for the care of patients and was often required to lift and bend. She was not, however, responsible for lifting patients out of bed without the assistance of others (Tr. 41). Plaintiff states that she left this job after only a few months due to health problems and did not work again until 1979, when she became employed as a custodian (Tr. 26). During her four years as a custodian, plaintiff lifted garbage and used a buffing machine, which she now alleges caused her to suffer pain and shortness of breath, resulting from the inhalation of dust and garbage (Tr. 39–40). On February 28, 1983, plaintiff ceased work as a custodian, and she states that she has not been employed since that time (Tr. 27). Plaintiff later stated, however, that she had also been employed at one time as a house cleaner (Tr. 41). The record is devoid, however, of any additional information regarding this employment, and plaintiff was unable to recall any details or dates of employment (Tr. 42). Plaintiff's original claim for benefits indicates that she took care of her own household duties and chores (Tr. 65). Plaintiff later contradicted herself when she testi-

fied during the administrative hearing that she was unable to clean her apartment, cook her meals or shop for food (Tr. 36–37). Plaintiff also stated that she neither had any hobbies nor attended church, and that she left home only to go to the doctor (Tr. 46). Again, plaintiff's original claim for benefits is at odds with her later testimony, where plaintiff had previously reported that she had usual social contacts (Tr. 65).

In support of her allegations of disability, plaintiff testified that her right kneecap was damaged, causing her right leg to give out while walking (Tr. 31). She also stated that this difficulty with her leg began two (2) years prior (*id.*) and is currently accompanied by pain on a daily basis (Tr. 35). Plaintiff further testified that both ankles were constantly swollen and that she suffered from a heart murmur which caused her to experience shortness of breath (Tr. 31, 34). In addition, plaintiff alleges headaches and dizziness on a weekly basis, which admittedly were relieved by medication (Tr. 35, 42). Finally, plaintiff stated that although she believed her pain medication was not strong enough (Tr. 42–43), it did enable her to sleep (Tr. 37).

The administrative law judge considered a variety of medical reports submitted in support of plaintiff's allegations.

Dr. I. Ahmad, who examined the plaintiff in connection with a worker's compensation claim on October 20, 1977, found tenderness in the back and neck area. Cervical and lumbar movements were restricted between 10 and 20 degrees, and increased pain was noted during the straight leg raising test. A 20 percent orthopedic disability was estimated (Tr. 113).

Dr. Malcolm H. Hermele, who examined the plaintiff on April 7, 1980, at the request of her attorney, noted that she smoked two to three packs of cigarettes a week. Physical examination revealed an "obese female in no acute distress" standing 5'6″ tall and weighing 230 pounds. Her blood pressure was recorded as 140/80, and her lungs were clear and heart sounds normal. No clubbing cyanosis or edema was noted in the extremities. Chest X-rays evidenced

increased broncho-vascular markings in the bilateral lower lung fields. Pulmonary function studies showed a normal vital capacity (VC) and forced one-second expiratory volume (FEV$_1$) of 2.1 liters. Dr. Hermele opined that the plaintiff suffered from chronic bronchitis, for which he estimated a permanent disability of 20% of total. In addition, based upon a history of hypertension, he estimated a permanent disability of 15% of total (Tr. 111).

Audiological testing performed on April 9, 1980, in connection with the plaintiff's worker's compensation claim revealed a bilateral 30% loss of hearing. Dr. Atif Z. Ghander estimated a permanent disability of 30% for each ear, as well as a 7½% permanent partial total (sic) disability due to subjective symptoms of tinnitus. Dr. Ghander also estimated a 7½% permanent partial total disability based on the cumulative effects of rhinosinusitis, nasopharyngitis and mucosal changes (Tr. 79, 114).

Opthalmological testing done on April 7, 1980, again in connection with plaintiff's worker's compensation case, exhibited normal visual acuity, although chronic conjunctivitis of both eyes resulting in a 10% permanent partial total disability was diagnosed (Tr. 76–77, 115–116).

On April 2, 1984, Dr. Burton M. Cohen performed an internal consultation, at which time the plaintiff complained of headaches, averaging at least two to three times a week, accompanied by some vertigo (Tr. 81). Plaintiff also complained of episodic chest pains, breathlessness on climbing a flight of stairs or walking three blocks on level ground, and swelling of the ankles on hot days, particularly at the end of a day (Tr. 82). Dr. Cohen's examination revealed a 5'6" tall, obese woman weighing 239¼ pounds. Fundi exhibited grade I changes. The lungs were clear and heart sounds normal. Flexion and extension of the knees exhibited a 25% decrease. A chest x-ray showed mild osteoarthritic lipping of the dorsal spine accompanied by minimal elevation of the diaphragms. An electrocardiogram revealed a first degree arteriovenous block and left ventricular enlargement. Based on his medical findings,

Dr. Cohen concluded that the plaintiff suffered from primary vascular hypertension and hypertension cerebral symptoms in addition to osteoarthritis and massive obesity. It was recommended that she lose a substantial amount of weight to help both her primary conditions (Tr. 83).

On April 6, 1984, a consultative orthopedic examination of the plaintiff was done by Dr. Francisco Miranda. Dr. Miranda noted that the plaintiff walked with an altagic gait. Examination of the lumbosacral spine and neck revealed neither tenderness nor pain. The plaintiff's knees, however, did exhibit a degree of tenderness accompanied by a limitation of flexion of the right knee (Tr. 86). X-rays taken of the knees evidenced some sharpening of the tibial spines and midcorners of the tibial plateau. Some patello-femoral degenerative changes were also noted (Tr. 87). Dr. Miranda gave a final diagnosis of bilateral knee ligament strain, osteoarthritis and obesity.

Dr. Harry W. Kingslow, plaintiff's only reported treating physician, notes in his report of February 11, 1985, that he saw the plaintiff in 1980 for marked obesity and mild hypertension. Her blood pressure was running in the range of 140/90 to 130/80 (Tr. 93). The report notes no other significant complaints until 1981, at which time the plaintiff complained of urinary frequency (Tr. 94). She was diagnosed as having possible cystitis, the symptoms of which were alleviated by Bactrum, and Dr. Kingslow felt she had a mass in the left lower quadrant. An upper gastrointestinal series done in October 1984 showed a suspected sliding hiatus hernia. The report also notes some lumbosacral tenderness and treatment for vaginal discharge and itching (Tr. 94). Dr. Kingslow last saw the patient on October 4, 1984 (*id.*).

Plaintiff was next seen on November 13, 1984, by Dr. Alan A. Kass. Dr. Kass's report notes plaintiff's complaint of severe pain around the right ankle and difficulty walking (Tr. 97). Physical examination of the ankle revealed edema and pain on palpitation. X-rays showed mild chip fractures around the lateral aspect of the malleolus

and ankle arthralgia (Tr. 98). Dr. Kass notes that the plaintiff was seen back on December 11, 1984, complaining of the same pain (*id.*), although no objective medical evidence pertaining to this visit is a part of the record.

From October 1984 to January 1985 plaintiff was under the care of Dr. Charles Kurtzer, a podiatrist. The doctor's report notes edema of the ankles accompanied by pain to palpitation and on forced inversion. The range of motion of the right ankle was reported as good, and an Unna Boot was applied on December 8, 1984 (Tr. 89, 92). Plaintiff was last seen by Dr. Kurtzer on January 17, 1985 (Tr. 89), after approximately three months of treatment.

■ Plaintiff now alleges that the Secretary improperly denied her claims for disability insurance benefits and SSI benefits where disability was established by reason of obesity in and of itself (Plaintiff's Memorandum of Law, p. 3). I find the record to the contrary.

Section 10.10 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, requires that a woman 5'6" tall weigh a minimum of 274 pounds and suffer from at least one of the enumerated impairments in that section before a finding of disability will be made. A complete examination of the record reveals that the maximum weight attained by the plaintiff was only 240 pounds. Plaintiff admits falling some 34 pounds short of the specified value, yet contends that numerous characterizations of her weight as obesity substantiate her claim. (Plaintiff's Memorandum of Law, p. 4). Where the record offered no medical findings of equal or greater significance than those set forth in Section 10.10 of the Listing of Impairments, the Secretary was correct in concluding that disability could not be established on these grounds (Tr. 11, 12).

■ Plaintiff further contends that she is totally disabled by reason of psychiatric disability pursuant to Section 12.04 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P. Appendix 1 (Plaintiff's Memorandum of Law, p. 6). As plaintiff never raised the issue of mental impairment at any stage of the administrative proceedings nor offered any evidence of treatment for such a condition, no final decision was rendered on this point, as required by 42 U.S.C. § 405(g), and this court therefore lacks jurisdiction to review plaintiff's allegations. 42 U.S.C. § 405(g).

Plaintiff also contends generally that the Secretary improperly addressed the medical evidence of record (Plaintiff's Memorandum of Law, p. 12). Specifically, plaintiff alleges that the Secretary failed to consider the deleterious effect of plaintiff's combined impairments; second, that he accorded too much evidentiary weight to plaintiff's having continued working for three additional years despite impairments discovered in connection with her worker's compensation claim; and, finally, that he improperly downplayed plaintiff's allegations of pain. After careful consideration, I disagree.

The Secretary carefully considered each of plaintiff's impairments, individually and in combination with each other, as reflected in his final determination (Tr. 11–12). Plaintiff's argument appears to be founded upon the belief that the Secretary failed to consider medical reports relating to plaintiff's worker's compensation claim (Plaintiff's Memorandum of Law, p. 10). This, however, was not the case.

It is well settled that the Secretary is charged with responsibility for choosing among conflicting medical opinions in determining whether an individual is disabled. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Evosevich v. Consolidated Coal Co.*, 789 F.2d 1021, 1027–28 (3d Cir.1986) *Newhouse v. Heckler*, 580 F.Supp. 1101, 1105 (E.D.Pa. 1984), *rev'd on other grounds*, 753 F.2d 283 (3d Cir.1985). *See also* 20 C.F.R. § 404.1526. The Secretary may properly accept some parts of medical evidence and reject other parts, provided that he considers all the evidence and shows some basis for discounting the rejected evidence. *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir.1983); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981); *Winston v. Heckler*, 585 F.Supp. 362, 367 (D.N.J.1984).

■ The Secretary properly attributed little weight to audiological and opthalmological test results submitted by Drs. Ghander and Klein, where examination of the record failed to reveal any allegations by plaintiff of either hearing or visual impairments. The Secretary also noted that disability reports submitted by the District Office of the Department of Health and Human Services contained no supportive allegations or pathology for the alleged impairments (Tr. 62–75). Furthermore, where the plaintiff affirmatively denied the existence of a hearing or sight impairment (Tr. 35), and where the Secretary observed plaintiff's ability to distinguish speech in a conversational tone of voice without undue difficulty (Tr. 10), it was not improper for the Secretary to attribute little, if any, weight to the audiological and opthalmological test results submitted on behalf of plaintiff's claim.[2]

This court also finds that the record does not support plaintiff's contention that the Secretary unduly emphasized plaintiff's ability to continue working for three additional years after having filed a worker's compensation claim (Plaintiff's Memorandum of Law, p. 11).

■ The Secretary correctly accorded little weight to medical reports submitted in connection with plaintiff's worker's compensation claim, and properly considered plaintiff's continuing work as further evidence supporting his conclusion that plaintiff's impairments were not sufficiently substantiated by either objective medical evidence or fact to warrant the granting of disability insurance benefits or SSI benefits.

■ Plaintiff also contends that the Secretary improperly downplayed her allegations of pain (Plaintiff's Memorandum of Law, p. 11). I am unable to agree. While it is clear that pain in and of itself may support a claim for benefits, *Smith v. Califano*, 637 F.2d 968, 973–74 (3d Cir.1981), it is equally clear that the "ALJ has discretion to evaluate the credibility of a claimant" in making a determination regarding the extent of the pain alleged. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

Where the plaintiff's testimony contains numerous contradictions with respect to past employment periods (Tr. 27, 42), ability to take care of her own household (Tr. 36–37, 65) and social contacts (Tr. 46, 65), the Secretary was not incorrect in finding her testimony lacking in credibility. Furthermore, it is noted that the plaintiff's allegations of chest pain, dizziness and headaches lack the confirmation of her only reported treating physician, Dr. Kingslow (Tr. 93–95), and were not mentioned by plaintiff during her interviews at the district office in March 1984 and December 1984 (Tr. 62–75). Thus, in light of the lack of clinical finding to support plaintiff's allegations, as well as the marked inconsistencies in her statements, the Secretary properly exercised his discretion in evaluating the credibility of the claimant.

Plaintiff's final contention is that this matter, at the very least, warrants remand for further consideration (Plaintiff's Memorandum, p. 14). The Secretary's determination may be remanded pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), where the claimant can show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence

---

**2.** This court notes a striking similarity between the reports submitted by Drs. Ahmad, Ghander and Klein, requested by plaintiff's counsel, Freeman & Bass, to the medical reports criticized in *Franklin v. Heckler*, 598 F.Supp. 784, 797–804, 817–833, Appendix B (D.N.J.1984). In *Franklin*, the court randomly chose four additional reports submitted by these three doctors (as well as two other physicians not involved here) in Social Security cases pending before the district court, where the claimant was represented by Freeman & Bass. Upon examination, these reports were identical, not only to each other, but also to those reports submitted to the *Franklin* court. *Id.* at 791. The court noted that, as was the situation in the instant case, some of the claimants had not even asserted conditions which the doctors reported as the cause of their disabilities. *Id.* The *Franklin* court stated that it had seen many reports from these doctors which exhibited the same characteristics. *Id.* I find, and the *Franklin* court found, that these reports are "generally suspect" (*Id.* at 790, n. 2), and that the ALJ is justified in affording them very little weight, or, as here, in not even addressing the reports at all.

**168**

into the record in a prior proceeding...."
In *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 833 (3d Cir. 1984), the Third Circuit stated that

As amended in 1980, § 405(g) now requires that to support a "new evidence" remand, the evidence must first be "new" and not merely cumulative of what is already in the record. E.g., *Bomes v. Schweiker,* 544 F.Supp. 72, 75–76 (D.Mass.1982). Second, the evidence must be "material"; it must be relevant and probative. E.g., *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination. *Id.; see also Bomes,* 544 F.Supp. at 76. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later acquired disability or of the subsequent deterioration of the previously non-disabling condition. *See Ward v. Schweiker,* 686 F.2d 762, 765 (9th Cir. 1982). Finally the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. E.g., *Brown v. Schweiker,* 557 F.Supp. 190 at 192 (M.D.Fla. 1983).

The Third Circuit, thus, makes clear that to obtain a remand, the claimant must show "that new evidence raises a reasonable possibility of reversal sufficient to undermine confidence in the prior decision." *Newhouse v. Heckler,* 753 F.2d 283, 287 (3d Cir.1985).

█ This court is unable to see where the proffered new evidence of minor surgery performed on an ingrown toenail and bump, considered either independently or in conjunction with plaintiff's other impairments, meets the materiality standard enunciated in *Szubak.*

In addition, there is no evidence which suggests that this impairment meets or exceeds the twelve-month duration requirement established in 42 U.S.C. § 423(d)(1)(A), and thus it could not have affected the prior decision. In light of the medical evidence presented and plaintiff's testimony, I believe the finding of the ALJ is supported by substantial evidence. For the reasons stated above, the decision of the Secretary is affirmed. An order accompanies this opinion. No costs.