

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-1999

# Miller v. Comm Social Security

Precedential or Non-Precedential:

Docket 98-5433

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Miller v. Comm Social Security" (1999). *1999 Decisions.* Paper 105.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/105

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 19, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5433

CHESTER MILLER,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY,
HON. SHIRLEY CHATER

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 96-cv-04976)
District Judge: Honorable Garrett E. Brown, Jr.

Submitted Under Third Circuit LAR 34.1(a)
March 10, 1999

Before: MANSMANN, SCIRICA and NYGAARD,
Circuit Judges.

(Filed April 19, 1999)

        Joel M. Solow, Esquire
        Freeman & Bass, P.A.
        24 Commerce Street
        Newark, New Jersey 07102

         Counsel for Appellant

Faith S. Hochberg, Esquire
United States Attorney
Peter G. O'Malley, Esquire
Assistant United States Attorney
Office of United States Attorney
970 Broad Street
Newark, New Jersey 07102

--Of Counsel--

Barbara L. Spivak, Esquire
Chief Counsel-Region II
Tomasina DiGrigoli, Esquire
Office of the General Counsel
Social Security Administration

 Counsel for Appellee

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Chester Miller brings this appeal asserting that the Social Security Administration erred in determining the onset date for his disability in awarding disability benefits under the Social Security Act. While Miller asserts several grounds of error, the issue necessitating clarification in this published opinion is whether the Administrative Law Judge (ALJ) applied the appropriate legal standard in considering the weight to be afforded a medical report submitted by a physician who has a history of submitting reports with virtually identical language in unrelated social security cases.[1] We hold today that while an ALJ may consider the fact that a report contains duplicative language as one factor in determining the amount of weight the report merits, it is erroneous for an ALJ to reject summarily a medical report based upon duplicative language without

_____

1. We find that Miller's other assertions of error, which relate to the testimony of Miller and his wife, lack merit and do not warrant lengthy discussion. Specifically, we find that the ALJ applied the appropriate legal standards in evaluating this testimony and that his conclusions on credibility are supported by substantial evidence.

2

considering the relationship of the medical report to the entire record. Because we find that the ALJ did not sufficiently consider the merits of one of the medical reports submitted in this case under this standard, we will remand this case for further proceedings.

I.

On April 15, 1993, Miller first applied for disability benefits alleging total disability beginning on December 1, 1991. The Social Security Administration initially allowed Miller's claim with an onset date of disability of October 2, 1993, based upon the neuropsychological evaluation in a December 2, 1993, report submitted by Dr. Haydon. Miller timely requested reconsideration and a hearing before an ALJ.

A hearing was held before an ALJ on June 30, 1995. Both Miller and his wife testified at the hearing. The ALJ determined that Miller was not entitled to benefits for the period from December 1, 1991, to October 2, 1993, because he failed to meet his burden of showing that he did not have the residual functional capacity to perform his prior work during the relevant time period. The ALJ specifically found that Miller's subjective complaints of pain during the relevant time period were not credible because they were not supported by medical evidence. In addition, the ALJ afforded minimal weight to three May 1993 medical reports submitted on behalf of Miller by Doctors Latimer, Pollack, and Friedman. The ALJ noted that these reports "are almost identical in their wording and substance to numerous other reports submitted by the same physicians in other cases . . ." and that "[t]he striking similarity of such reports across numerous unrelated cases undermines their credibility . . . ." See Record at 24. Miller timely filed an action in the District Court challenging the ALJ's determination.

The District Court affirmed. On the issue of Dr. Latimer's May 1993 report, the District Court cited Williams v. Sullivan, 970 F.2d 1178, 1185 n.5 (3d Cir. 1992), in holding that the ALJ had the authority to afford this report little weight based on the submission of virtually identical

reports by Dr. Latimer in other cases. See District Court
Opinion at 17. Accordingly, because the District Court
found that the ALJ properly weighed all the evidence before
him, the District Court held that the ALJ's determination
was supported by substantial evidence. Miller timely filed
this appeal.

II.

Freeman & Bass, the law firm representing Miller,
apparently has a practice of obtaining one or several
medical reports from a small group of physicians to submit
on behalf of their clients for both workmen's compensation
claims and social security claims. The problem with these
reports, as noted by numerous courts, is that the wording
of the reports is often identical and not individually tailored
to the firm's clients. See, e.g., Williams v. Sullivan, 970 F.2d
1178, 1185 n.5 (3d Cir. 1992); Coria v. Heckler, 750 F.2d
245, 248-49 (3d Cir. 1984)(Garth, J., concurring); Bradley
v. Bowen, 667 F. Supp. 161, 167 n.2 (D.N.J. 1987);
Franklin v. Heckler, 598 F. Supp. 784, 789-90 (D.N.J.
1984); Winston v. Heckler, 585 F. Supp. 362, 367 (D.N.J.
1984). Due to the repetitive nature of the diagnoses in
these reports, some District Courts have held that ALJs are
justified in affording them little weight. See Bradley, 667 F.
Supp. at 167 n.2; Franklin, 598 F. Supp. at 790.

This issue first drew the attention of this Court in Coria
v. Heckler, 750 F.2d 245, 248-49 (3d Cir. 1984)(Garth, J.,
concurring). In Coria, Judge Garth opined in his
concurrence that given the nature of these reports, it is
appropriate for an ALJ to discount the reliability of the
physicians' conclusions and to afford such reports little, if
any, weight. The issue was again raised in Williams v.
Sullivan, 970 F.2d 1178 (3d Cir. 1992), where we affirmed
a finding of no disability. In a footnote, we stated that an
ALJ may not simply reject medical reports due to their
similarity to other reports in unrelated litigation, but that in
weighing the credibility of such reports, an ALJ may
properly consider the fact that the physician made a similar
finding in a separate action and may give little weight to
rote medical findings in case after case. Williams, 970 F.2d
at 1185 n.5. Judge Garth wrote an extensive concurrence

4

in Williams opining that an ALJ has the discretion to reject completely the boilerplate, stereotyped medical reports often submitted by Freeman & Bass. See Williams, 970 F.2d at 1188-94.

Aside from the foregoing dicta, we have yet to address specifically the issue of the appropriate weight to be given these types of reports. In what appears to be the sole published opinion from our sister courts of appeals on this issue, the Court of Appeals for the Eleventh Circuit has held that it is inappropriate for an ALJ to discount a medical report solely on the basis that certain physicians "almost invariably conclude that the person being examined is totally disabled" because such an observation, without supporting evidence, indicates potential bias. See Miles v. Chater, 84 F.3d 1397, 1399-1401 (11th Cir. 1996).

While we agree that it is erroneous for an ALJ to reject every report submitted by a certain physician or lawfirm simply because the physician often reaches the same conclusion in every case, an ALJ should be afforded substantial discretion to give little weight to a medical report that was carbon-copied from previous litigation without taking into account the specific applicant's condition. We accordingly hold today that while an ALJ may consider the boilerplate nature of a report as one factor in determining the appropriate weight to afford the report, an ALJ may not summarily reject a report solely because it contains some language repetitive of portions of previously submitted reports. This rule permits an ALJ to afford a rote report little weight in the appropriate case, but requires the ALJ to consider all aspects of the case before rejecting the report based solely on duplicative language.

III.

Applying these principles to this case, we find that the ALJ properly afforded the reports of Doctors Pollack and Friedman minimal weight but failed to consider adequately the merits of Dr. Latimer's report. The ALJ offered the following explanation in discounting these three reports:

> [T]he claimant's attorney submitted several medical
> reports which were apparently prepared in connection

5

with a worker's compensation claim. These reports were submitted by Dr. Latimer, Dr. Pollock, and Dr. Friedman, in May 1993. These physicians frequently submit reports in Social Security Administration cases. Their findings and conclusions frequently contain virtually identical wording, often refer to impairments not alleged by the claimant or supported by any medical evidence, and they rarely vary significantly from case to case.

* * *

I have fully reviewed the reports of Doctors Pollack, Latimer, and Friedman. They are almost identical in their wording and substance to numerous other reports submitted by the same physicians in other cases. The striking similarity of such reports across numerous unrelated cases undermines their credibility and the objectivity of their findings and conclusions. Therefore, they have minimal probative value from an evidentiary standpoint and I accord little weight to them.

Record at 23-24. Although we see no error in this analysis with respect to the reports of Doctors Pollack and Friedman because these reports are simply boilerplate and unsupported by other evidence in the record, it is unclear, however, whether the report of Dr. Latimer suffers the same malady or is likewise unsubstantiated.

The District Court cases that have criticized the reports of Doctors Pollack and Friedman quote substantive medical portions of these reports which are virtually identical to portions of these same physicians' reports on Miller. Compare Winston, 585 F. Supp. at 364 (quoting Dr. Pollock report diagnosing "neurological residuals of exposure to noxious fumes and dust and loud noise, also sciatic neuritis, and traumatic anxiety psychoneurosis, attributable to exposure at work"); Franklin, 598 F. Supp. at 792-96 (reproducing reports by Dr. Pollock containing same language); Franklin, 598 F. Supp. at 805-16 (reproducing several Dr. Friedman reports diagnosing patients with varying symptoms as suffering from chronic bronchitis and hypertensive vascular disease); with Record

6

at 197 (Dr. Pollack report diagnosing Miller with "[n]eurological residuals of exposure to noxious fumes, dust, loud noise, and post-traumatic anxiety stress disorder . . . attributable to exposure at work."); Record at 247-50 (Dr. Friedman report diagnosing Miller with chronic industrial bronchitis and hypertensive cardiovascular disease). By contrast, a review of the opinions quoting reports by Dr. Latimer indicates that the sole repetitive portion of Dr. Latimer's report on Miller is Dr. Latimer's conclusion that "[t]he patient is totally and permanently disabled as a psychophysiological working unit." See, e.g., Taybron v. Harris, 667 F.2d 412, 414 (3d Cir. 1981)(quoting Dr. Latimer report concluding "[a]s an industrial unit he should be considered totally disabled . . . ."); Cruz-Santos v. Callahan, 1998 WL 175936, *3 (D.N.J. 1998)(quoting Dr. Latimer report concluding that patient is a "totally and permanently disabled psychophysiological working unit . . . ."). Because a physician's ultimate conclusion on disability is not binding on an ALJ, Dr. Latimer's repetitive conclusions as to disability do not cast the same degree of doubt on the non-repetitive substantive portions of his report as the repetitive diagnoses cast on the overall merits of the reports of Doctors Pollock and Friedman.

In addition, unlike the reports of Doctors Pollock and Friedman, portions of Dr. Latimer's report find support in other evidence in the record. Dr. Latimer's May 21, 1993, report is very similar to the report of Dr. Haydon from December 2, 1993, upon which the Commissioner relied in granting Miller's disability claim. For example, Dr. Latimer notes that Miller was a poor historian, his cognition was poor, and his memory, orientation, judgment, insight, concentration and attention span were questionable. See Record at 198-99. Dr. Haydon based his diagnosis of amnestic disorder on Miller's unreliable memory and the fact that he is a poor historian. Id. at 252-54. Given the similarities of these reports and the fact that the Commissioner credited Dr. Haydon's report in awarding benefits, it cannot be said that Dr. Latimer's report finds no support in the other medical evidence of record. 2

_____

2. In addition, at least one Social Security Administration reviewer seems to have credited Dr. Latimer's report. See Record at 95 (Social Security Administration reviewer's report)(noting that evidence of organic mental disorders included Dr. Latimer's May 1993 report diagnosing Miller with an organic personality disorder).

7

We recognize that the ALJ stated in his decision that he fully reviewed the report of Dr. Latimer. Because Dr. Latimer's report is, at least in part, substantiated by Dr. Haydon's report and because there is no indication in the case law that Dr. Latimer's report contains carbon-copied diagnoses that do not take into account Miller's condition, however, we must conclude that the ALJ likely lumped Dr. Latimer's report with the reports of Doctors Pollack and Friedman in rejecting it without significant analysis of its contents. Under these circumstances, the ALJ erred in affording Dr. Latimer's report little weight based solely on a perception that his report was a typical Freeman & Bass boilerplate report.

There are proper reasons for which the ALJ might have chosen not to credit Dr. Latimer's report. For example, the ALJ might have given it little weight because it is not substantiated by medical testing. In addition, the ALJ might have reasonably determined that Dr. Latimer's report was insufficient by itself to establish disability starting from May of 1993. Because the ALJ rejected Dr. Latimer's report solely on the basis that he perceived it to be a boilerplate report, however, we cannot say that the ALJ properly weighed this report. We accordingly shall remand this case for consideration of the merits of Dr. Latimer's report in light of our discussion.

IV.

For the foregoing reasons, we will reverse the District Court's order and remand this case to the District Court with instruction to remand to the Commissioner of Social Security for consideration of the relative merits of Dr. Latimer's report.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

8